UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD CUPP,

    Plaintiff,

    v.

ANDREW SMITH, et al.,

    Defendants.

Case No. 20-cv-03456-PJH

**ORDER DENYING APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

Re: Dkt. No. 20

Before the court is plaintiff Ronald Cupp's ("plaintiff") ex parte application for a temporary restraining order and motion for a preliminary injunction. Dkt. 20. Having read the parties' papers and carefully considered their argument and the relevant legal authority, and good cause appearing, the court hereby **DENIES** plaintiff's requests.

## BACKGROUND

**A.   The Underlying Claims**

On May 21, 2020, plaintiff filed the instant civil rights action against defendant County of Sonoma ("Sonoma County"), Andrew Smith ("Smith"), Tyra Harrington ("Harrington") ("defendants"), as well as other individuals not relevant to the instant motion. Dkt. 1 (Compl.). In it, plaintiff alleges that defendants violated his Fourth Amendment, Fifth Amendment, and certain due process rights in connection with their alleged February 15, 2019 "trespass" and "search" of plaintiff's property at 4640 Arlington Avenue, Santa Rosa, California. Compl. ¶¶ 20-22. Plaintiff's property comprises 4.33 acres of land and is "completely fenced in" with a "solid wood" fence. Dkt. 20-2 ¶¶ 3, 8.

Plaintiff's due process deprivation claim stems from defendants maliciously denying plaintiff his request for an appeal of the citations issued by Sonoma County

following their February 15, 2019 visit.  Id. ¶¶ 65-72.  Plaintiff adds ancillary state law claims for trespass, land patent infringement, slander of title, as well as excessive fines, all of which arise from the February 15, 2019 visit.  Id. ¶¶ 89-106.

**B.    The July 30, 2020 Search**

On July 20, 2020, an unspecified judge of the Sonoma County Superior Court signed and issued an inspection warrant of plaintiff's property pursuant to California Code of Civil Procedure § 1822.50, *et. seq.*  Dkt. 20-1 at 8.  The warrant authorized Sonoma County to search the "interior and exterior" of the premises and "all items on and associated to" the property, including "the surrounding grounds . . . garages . . . [and] any vehicles, trailers, or motor-homes present on the property."  Id. at 10.  The warrant added various endorsements authorizing the use of reasonable force for entry, id. at 13, its execution in the absence of the owner or occupant, id. at 14, and shortened notice to Cupp and other occupants, id.[1]

Ten days later, Smith, Harrington, and Todd Hoffman (an inspector with Sonoma County, Dkt. 25-1 at ¶ 7) arrived at plaintiff's property and "passed thru" [sic] his "solid wood" fence.  Dkt. 20-2 ¶ 8.  Smith used "some sort of metal ram to bust in the doors and bust the locks and door jambs."  Id. ¶ 9.  Following the entry, Smith posted on plaintiff's property various citations concerning certain "construction(s) without permit," Dkt. 20-1 at 1-2, 4, 7, "unlawful use/zoning violation(s)," id. at 3, "unlawful commercial cannabis use," id. at 5, and "dangerous building(s)," id. at 6.  By a phone call from Harrington, plaintiff learned about the search immediately before it occurred but was not present when Smith, Hoffman, and Harrington conducted it.  Dkt. 20-2 at ¶ 8. During the search, Smith stated to someone living in a trailer on the property that he or she needed to leave and that defendants "were going to get the PG&E power shut off."  Dkt. 20 at 7.

---

[1] Shortly after filing their opposition, defendants filed an errata indicating that it is unclear whether the judge who signed the July 20, 2020 warrant was Assistant Presiding Judge Shelly Averill or the judge to whom defendants presented the inspection warrant, Presiding Judge Bradford DeMeo.  Dkt. 28.  This court cannot tell from the signature which judge signed it.  To simplify, the court will not refer to the issuing judge by name.

On July 31, 2020, the day after the search, Hoffman filed a return of inspection with the Sonoma County Superior Court. Dkt. 25-5. In his supporting declaration, Hoffman details the various violations observed. Id. ¶ 4. Those violations include the cultivation of over 450 cannabis plants, id. ¶ 4(B)(6), hazardous electrical work to plaintiff's barn, id. ¶ 4(C)(2), and a water heater powered by propane added to plaintiff's garage, id. ¶ 4(C)(7). That same day, Smith returned outside plaintiff's property and posted another citation. Dkt. 26.[2] The court details other evidence proffered by the parties as necessary in its analysis below.

## C. The Instant Motion

On July 31, 2020, plaintiff filed the instant motion on an ex parte basis. In it, he seeks "protection and status quo" until the court can decide this action on the merits. Id. at 7-8. Plaintiff expressly asked this court to order defendants not to direct PG&E to terminate his power. Id. at 8.

Within hours, the court issued its order denying plaintiff's request to proceed on an ex parte basis and setting a briefing schedule. Dkt. 21. The court also ordered defendants to refrain from issuing any direction to third-party PG&E to terminate plaintiff's electricity until it resolves the instant motion. Id. at 3. They complied. Dkt. 25 ¶ 12.

## DISCUSSION

## A. Legal Standard

Federal Rule of Civil Procedure 65 provides federal courts with the authority to issue temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65(a)-(b). Generally, the purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered, U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction

---

[2] The court did not allow plaintiff leave to file a reply and warns him against making such unauthorized filings in the future. In any event, the court has considered plaintiff's reply and will detail it as necessary.

hearing may be held, Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers, 415 U.S. 423, 439 (1974)). Requests for temporary restraining orders are governed by the same legal standards that govern the issuance of a preliminary injunction. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); Munaf v. Geren, 553 U.S. 674, 689-90 (2008). A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam).

"A plaintiff seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, that [2] he is likely to suffer irreparable harm in the absence of preliminary relief, that [3] the balance of equities tips in his favor, and that [4] an injunction is in the public interest." Winter, 555 U.S. at 20. Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011). Stated differently, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135; Disney Enterprises, Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017).

**B.    Analysis**

The court concludes that plaintiff failed to show that he is entitled to preliminary injunctive relief. As analyzed below, plaintiff's request fails under every Winters factor.

**1.    Plaintiff Failed to Show a Likelihood of Success on the Merits**

To substantiate this factor, plaintiff analyzes the likelihood that he will succeed on

4

1  only (1) his Fourth Amendment claim for unlawful search premised upon the alleged
2  February 15, 2019 entry; and (2) his claim for deprivation of due process concerning his
3  denied request to appeal the citations issued after that visit.  Dkt. 20 at 4-5.  Below, the
4  court analyzes plaintiff's likelihood of success on each claim in turn.

         **a.    The Claim for Unlawful Entry**

6     Plaintiff failed to show that he is likely to succeed on the merits of his claim for
7  unlawful entry.  As an initial matter, plaintiff did not present any evidence to support
8  finding that Smith, in fact, entered his property on February 15, 2019.  To the contrary,
9  defendants proffered affirmative evidence showing that Smith did not do so.  In his
10 declaration in support of the July 30, 2020 warrant, Hoffman states that in January 2019,
11 Smith "observed" from plaintiff's property's "right of way" numerous violations, including
12 "unpermitted construction/remodel of the primary residence, a barn, and a garage. . . .
13 [and] at least one of the structures [] being converted into an unpermitted dwelling unit."
14 Dkt. 25-2 at 7-8.  For context, Hoffman explains that Smith then ran a permit history
15 search of the property and "posted the notices to the property in February 2019."  Id. at 8.

16     The court finds Hoffman's statement credible.  Based on an aerial photo of
17 plaintiff's property attached to Hoffman's declaration in support of the July 20, 2020
18 warrant, Dkt. 25-2 at 26, it appears that Smith could have easily viewed the unauthorized
19 structures behind plaintiff's wooden fence from alongside the road.  Given the above, the
20 court concludes that plaintiff failed to show that he is likely to succeed on the merits of his
21 claim for unlawful entry.

         **b.    The Claim for Deprivation of Due Process**

23     Plaintiff also failed to show that he is likely to succeed on the merits of his claim for
24 deprivation of due process.  In a prior request for judicial notice, defendant proffered
25 evidence showing that plaintiff did receive the opportunity for a hearing for the notice of
26 abatement proceedings initiated against him in connection with the February 15, 2019
27 visit.  Dkt. 10-3 at 2-4.  On September 4, 2019, plaintiff sent a letter to Sonoma County's
28 Code Enforcement Supervisor, Mark Franceschi, expressly stating that "I am in receipt of

your letter dated August 28, 2019 titled **Notice of Abatement Hearing**." Dkt. 10-4 at 2. In that letter, plaintiff goes on to explain that he is "not available at the end of this month [September 2019] . . . Please reschedule for last part of October 2019." Id. This letter directly undermines plaintiff's allegation that defendants "knew of [his] request for an appeal . . . regarding the citations Smith caused and denied Cupp." Compl. ¶ 67.

While ten months to reschedule an administrative hearing is a long time, defendants cite the October 2019 Kincade fires in the county, this litigation, and the ongoing pandemic as exceptional circumstances that have prevented rescheduling that hearing. Dkt. 26 at 5. Counsel for defendants represents to this court that the subject hearing is "in queue to be scheduled." Id. If that representation is true, such hearing would provide plaintiff the process requested and, thus, moot this claim. Given the above, the court concludes that plaintiff failed to show that he is likely to succeed on the merits of his claim for deprivation of due process.

### 2. Plaintiff Failed to Show Irreparable Injury in the Absence of the Preliminary Relief Requested

Plaintiff suggests that, in the absence of preliminary relief, he will suffer irreparable injury in three ways.

First, plaintiff argues that defendants will retaliate against him by future "unconstitutional search and harassment without warrants or prior notice." Dkt. 20 at 7. Plaintiff appears to base this argument on the July 30, 2020 search. Id. This reason is undermined by the evidence proffered: a judge authorized such entry without 24-hour notice by warrant. Dkt. 20-1 at 9-14.

In his reply, plaintiff states that he "continues to claim there was no warrant" until he "may challenge the affidavit of probable cause." Dkt. 26 at 2. Despite having that affidavit, Dkt. 25-2, plaintiff failed to contest its sufficiency or accuracy. In any event, based on review of that affidavit, the court finds it implausible that he could overcome its presumed validity. Franks v. Delaware, 438 U.S. 154, 171 (1978). Accordingly, the court has no basis to conclude that defendants will unlawfully retaliate against plaintiff.

6

1 Second, plaintiff suggests that the defendants' actions will harm the "forever
2 benefits" of his property's "land patent." Dkt. 20 at 7. Plaintiff fails to explain how, absent
3 preliminary relief, defendants would disrupt any such perpetual benefits of his real
4 property. The court cannot discern one. Given that, it need not consider any such harm.

5 Third, while not neatly articulated, plaintiff argues that defendants will direct PG&E
6 to terminate his power. This argument potentially carries more weight. Plainly, the
7 absence of utilities may harm plaintiff. However, he fails to explain how or why any such
8 harm would be irreparable. In any event, any cognizable harm that plaintiff could cite as
9 a result of having his electricity terminated appears self-imposed. As defendants "hope"
10 for in their opposition, plaintiff could "abate the public nuisance and . . . work with the
11 County . . . to deal with the violations." Dkt. 25 at 7. Accordingly, the court concludes
12 that plaintiff failed to clearly show that he will likely suffer irreparable harm in the absence
13 of preliminary relief.

### 3. Defendants Showed that the Remaining Winters Factors Cut Against Ordering the Preliminary Relief Requested

In his opening brief, plaintiff did not present any evidence or make any arguments establishing that the balance of equities tips in his favor or that the requested relief is in the public interest. On these omissions alone, plaintiff failed to satisfy the remaining Winters factors.

That failure aside, defendants proffered evidence showing that the public interest favors denying any preliminary relief that would prevent it from pursuing abatement proceedings against plaintiff or terminating his utilities. Significantly, in his declaration to this court, Hoffman states the following:

> "the unpermitted and illegal electrical wiring and gas piping systems in the cannabis barn, presented an immediate and serious danger to the public, as well as the residents on the property. The open electrical wiring ran through water and in a different room, wiring was present with the unpermitted gas piping. A major fire or explosion could occur at any time, thereby endangering the surrounding neighbors and community. It is imperative that the entire electrical system be shut down until the problems are abated and legally permitted."

7

Dkt. 25-1 ¶ 10.

Attached to his return of warrant, Hoffman provides two pictures from inside plaintiff's barn that appear consistent with this determination. Dkt. 25-5 at 11-12. Both show rows of cannabis under exposed ceilings with hanging wires and lights as well as uncovered air vents. Id. Aside from his conclusory assertions that there are "no immediate dangers to person or property," Dkt. 26 at 4; Dkt. 27 at 2, plaintiff fails to proffer any evidence contradicting Hoffman's determination. Given the apparent fire risk that the conditions of the barn poses, the court concludes that the public interest cuts in favor of denying the preliminary relief requested.

Lastly, given the abundant evidence proffered by defendants that plaintiff has been engaged in unlawful activity, Dkt. 25-5 at ¶ 4 (B)-(C) (listing 16 different sorts of violations), the court further concludes that the balance of equities also favors denying that relief.

## CONCLUSION

For the above reasons, the court **DENIES** plaintiff's application for a temporary restraining order and motion for preliminary injunction. The court acknowledges that Sonoma County alternatively argues that the court should dismiss the claims against it under the Younger abstention doctrine. Sonoma County raises that issue in its pending motion to dismiss, which is the proper procedural vehicle for the court to address it.

**IT IS SO ORDERED.**

Dated: August 5, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge