1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

RONALD CUPP,

8

                    Plaintiff,

Case No.  20-cv-03456-PJH

9

        v.

10

ANDREW SMITH, et al.,

**ORDER GRANTING MOTION TO
DISMISS AND DENYING MOTION TO
DISQUALIFY COUNSEL**

11

                    Defendants.

Re: Dkt. No. 9, 14

12
13

        Before the court is County of Sonoma's ("Sonoma County"), Andrew Smith's

14

("Smith"), Margarett Willet's ("Willett"), Tyra Harrington's ("Harrington"), Mark

15

Franceschi's ("Franceschi"), and Tennis Wick's ("Wick") (collectively, the "Individual

16

Defendants" and jointly with Sonoma County, "defendants") motion to dismiss.  Dkt. 9.

17

Also before the court is plaintiff Ronald Cupp's ("plaintiff") motion to disqualify counsel.

18

Dkt. 14.  Having read the parties' papers and carefully considered their argument and the

19

relevant legal authority, and good cause appearing, the court hereby **GRANTS**

20

defendants' motion to dismiss and **DENIES** plaintiff's motion to disqualify.

21

                                   **BACKGROUND**

22

**A.      Factual Background**

23

        Plaintiff owns certain real property ("the property") located in the County of

24

Sonoma.  Dkt. 1 ("Compl.") ¶ 3.  The Individual Defendants are employees of Sonoma

25

County's Code Enforcement and Permit & Resource Management divisions.  Id. ¶¶ 4-8.

26

Plaintiff alleges various federal civil rights claims and state law torts against defendants.

27

He requests both monetary and injunctive relief.  Id. Prayers for Relief ¶¶ 1-5, 8. To the

28

extent discernable, plaintiff's claims include or are brought under the following:

United States District Court
Northern District of California

United States District Court
Northern District of California

- Title 42 U.S.C. § 1983 against Smith for unlawful search in violation of the Fourth Amendment and California Health and Safety Code § 17972.  Id. ¶¶ 58-64.
- Title 42 U.S.C. § 1983 against the Individual Defendants for violation of plaintiff's due process rights under the United States Constitution.  Id. ¶¶ 65-72.
- Title 42 U.S.C. § 1983 against all defendants for levying "excessive fines" against plaintiff for the property's violations of the county building code.  Id. ¶¶ 105-06.
- Title 42 U.S.C. § 1985 against all defendants for conspiracy to deprive plaintiff of his right to a hearing and appeal.  Id. ¶¶ 73-79.
- Title 42 U.S.C. § 1986 against all defendants for failing to prevent harmful slander against the property.  Id. ¶¶ 80-88.
- Trespass against Smith, Willet, Harrington, and Franceschi.  Id. ¶¶ 89-94.
- "Land patent infringement" against all defendants.  Id.  ¶¶ 95-98.
- "Slander" of the property's title against all defendants.  Id. ¶¶ 99-104.

Each claim arises out of a supposed "trespass" by Smith, a Sonoma County Code inspector, on the property on February 15, 2019.  Id. ¶¶ 4, 20-22.   Shortly after that, on February 19, 2019, Sonoma County issued plaintiff two citations for unlawful land use and construction without a permit.  Id. ¶ 23; Dkt. 10-1.[1]  Between February 2019 and November 2019, plaintiff, Smith, and Franceschi (Smith's supervisor) exchanged various letters.  Those letters concern the following:

- The property's code violations.  Compl. ¶ 25; Dkt. 30-3 at 2-6.
- The possibility of an administrative hearing allowing plaintiff the opportunity to challenge such violations. Compl. ¶¶ 25- 26; Dkt. 30-3 at 8-17.
- A notice of abatement proceeding instituted against the property. Compl. ¶ 30; Dkt. 30-3 at 19-31.
- A government tort claim premised on Smith's purported February 15, 2019 entry

---

[1] The court **GRANTS** Sonoma County's request for judicial notice of the documents filed at Dkt. 10 and cited in this order.  Plaintiff failed to oppose this request.  Further, the cited documents are either matters of public record or are referred to and relied on in the complaint.

United States District Court
Northern District of California

1    onto the property. Compl. ¶ 35; Dkt. 30-3 at 33-36, 41.

2        Relying on these communications, plaintiff alleges that he "has continually

3    attempted . . . to have a hearing and/or appeal" of the citations issued on February 19,

4    2019. Compl. ¶¶ 25-26, 35-37. According to plaintiff, defendants have acted in concert

5    to ignore and deny him such a hearing. Id. ¶¶ 40, 42. The precise wording of these

6    communications is critical, so the court will detail their contents in its analysis below.

7        On June 13, 2019, Sonoma County filed a notice of abatement proceedings

8    concerning the property's violations with the county recorder's office. Id. ¶ 30. As of May

9    15, 2020, Sonoma County has assessed plaintiff approximately $93,000 for his property's

10   then-outstanding violations. Id. ¶ 28. That amount reflects the sum of $90 per day for

11   each violation since February 15, 2019. Id. ¶ 27; Dkt. 30-3 at 8-9.

12   **B.    Procedural History**

13       On October 23, 2019, plaintiff filed a California Government Code § 910 claim

14   against Sonoma County. Compl. ¶¶ 35-36; Dkt. 10-5. According to plaintiff, on

15   November 6, 2019, Sonoma County sent plaintiff a "notice of return of untimely claim,"

16   Dkt. 30-3 at 41, apparently rejecting plaintiff's § 910 claim as untimely. On November 13,

17   2019, plaintiff responded, arguing the timeliness of his claim. Id. Six months later, in late

18   May, plaintiff initiated this action. Dkt. 1. The record is silent on what, if anything,

19   transpired between the parties during that period. Defendants filed their motion to

20   dismiss on June 29, 2020. Dkt. 9. Plaintiff filed his motion to disqualify Sonoma County

21   counsel from representing the Individual Defendants shortly after. Dkt. 14.

22       On July 30, 2020, while those motions were pending, Sonoma County conducted

23   an inspection of the property pursuant to a warrant authorized by a Sonoma County

24   Superior Court judge under California Code of Civil Procedure § 1822.50, *et. seq.* Dkt.

25   25-4. Sonoma County identified numerous additional code violations during the

26   inspection. Dkt. 25-6. On July 31, 2020, in response to that inspection, plaintiff filed a

27   motion for a temporary restraining order and preliminary injunction asking the court to

28   maintain the "status quo" until finally adjudicating this action. Dkt. 20 at 8. The court

denied that motion on August 5, 2020.  Dkt. 29.  Following that denial, plaintiff requested that the court permit him to file a supplemental declaration (Dkt. 30-2) and its underlying exhibits (Dkt. 30-3) in support of his opposition to the motion to dismiss.  Dkt. 30.  The supplemental declaration outlines additional facts related to some of plaintiff's claims. Dkt. 30-2.  The court granted that request and permitted defendants an opportunity to respond.  Dkt. 34.  Defendants filed their further reply on August 17, 2020.  Dkt. 35.  In it, they stated that they would provide plaintiff an administrative hearing to challenge the citations issued on February 19, 2019.  Id. at 4.

## DISCUSSION

### A.    Legal Standards

#### 1.    Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Rule 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal "is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

As a general matter, the court should limit its Rule 12(b)(6) analysis to the contents of the complaint, although it may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim,

United States District Court
Northern District of California

1   and no party questions the authenticity of the document"). The court may also consider

2   matters that are properly the subject of judicial notice, <u>Lee v. City of L.A.</u>, 250 F.3d 668,

3   688–89 (9th Cir. 2001), exhibits attached to the complaint, <u>Hal Roach Studios, Inc. v.</u>

4   <u>Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents

5   referenced extensively in the complaint and documents that form the basis of the

6   plaintiff's claims, <u>No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding</u>

7   <u>Corp.</u>, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

8       Lastly, a district court "should grant the plaintiff leave to amend if the complaint

9   can possibly be cured by additional factual allegations," however, dismissal without such

10  leave "is proper if it is clear that the complaint could not be saved by amendment."

11  <u>Somers</u>, 729 F.3d at 960.

12      **2.    Motion to Disqualify Counsel**

13      Matters of disqualification generally are governed by state law. <u>In re County of Los</u>

14  <u>Angeles</u>, 223 F.3d 990, 995 (9th Cir.2000).  Under California law, "the propriety of

15  disqualification depends on the circumstances of the particular case in light of competing

16  interests." <u>Oaks Mgmt. Corp. v. Superior Court</u>, 145 Cal. App. 4th 453, 464 (2006).

17  Accordingly, a court considering a motion to disqualify must "weigh the combined effect

18  of a party's right to counsel of choice, an attorney's interest in representing a client, the

19  financial burden on a client of replacing disqualified counsel and any tactical abuse

20  underlying a disqualification proceeding against the fundamental principle that the fair

21  resolution of disputes within our adversary system requires vigorous representation of

22  parties by independent counsel unencumbered by conflicts of interest."  <u>Id.</u> at 465.

23      "The right to disqualify counsel is within the discretion of the trial court as an

24  exercise of its inherent powers."  <u>Visa U.S.A., Inc. v. First Data Corp.</u>, 241 F. Supp. 2d

25  1100, 1103 (N.D. Cal. 2003).  Because motions to disqualify are "often tactically

26  motivated," they are subject to "particularly strict judicial scrutiny" and "[t]he party seeking

27  disqualification bears a heavy burden."  <u>Dimenco v. Serv. Employees Int'l Union</u>, 2011

28  WL 89999, at *3 (N.D. Cal. Jan. 10, 2011).  When considering disqualification, courts

1  must make "'a reasoned judgment,'" may "resolve disputed factual issues," and should

2  support their findings by substantial evidence.  Id.

3  **B.    Motion to Dismiss Analysis**

4        In their motion, defendants advance two categories of arguments.  First, they

5  argue that plaintiff's claims are non-justiciable.  Second, they challenge plaintiff's

6  allegations as insufficient to state a claim.  The court considers each category in turn.

7        **1.    Justiciability Challenges[2]**

8        Defendants advance two sorts of justiciability arguments: (1) plaintiff's claims are

9  barred by the abstention doctrine set forth in Younger v. Harris, 401 U.S. 37 (1971); and

10  (2) plaintiff's claims are barred by the sovereign immunity doctrine.

11        **a.    Younger Bars Any Request for Injunctive Relief**

12        As a starting point, "federal courts are obliged to decide cases within the scope of

13  federal jurisdiction. Abstention is not in order simply because a pending state-court

14  proceeding involves the same subject matter."  Sprint Commc'ns, Inc. v. Jacobs, 571

15  U.S. 69, 72 (2013).  The Supreme Court has recognized, however, that "certain instances

16  in which the prospect of undue interference with state proceedings counsels against

17  federal relief."  Id.  Although "exceptional," id. at 73, such proceedings include the

18  following "three categories of cases: (1) parallel, pending state criminal proceedings, (2)

19  state civil proceedings that are akin to criminal prosecutions, and (3) state civil

20  proceedings that implicate a State's interest in enforcing the orders and judgments of its

21  courts." Herrera v. City of Palmdale, 918 F.3d 1037, 1043 (9th Cir. 2019).  Articulated by

22  the Supreme Court in New Orleans Public Service, Inc. v. Council of New Orleans, 491

23  U.S. 350 (1989) ("NOPSI"), "[t]hese three categories are known as the NOPSI

24

25  ────────────────

26  [2]  In their notice of motion, defendants claim to bring their motion pursuant to both Rule
    12(b)(1) and Rule 12(b)(6).  In their opening brief, however, they fail to provide any
    indication that their justiciability challenges are properly analyzed for lack of subject
27  matter jurisdiction as opposed to failure to state an actionable claim.  Consistent with
    other courts considering similar issues, the court will analyze these challenges under
28  Rule 12(b)(6).  Dignity Health v. Dep't of Indus. Relations, 445 F. Supp. 3d 491, 496-501
    (N.D. Cal. 2020).

United States District Court
Northern District of California

categories." Herrera, 918 F.3d at 1044.

To warrant abstention, the subject state action must first "fall into one of the NOPSI categories" and, second, "satisfy a three-part inquiry: the state proceeding must be (1) 'ongoing,' (2) 'implicate important state interests,' and (3) provide 'an adequate opportunity . . . to raise constitutional challenges.'" Id. citing Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (the "Middlesex factors"). Finally, "[i]f the state proceeding falls into one of the NOPSI categories and meets the three Middlesex factors, a federal court may abstain under Younger so long as 'the federal action would have the practical effect of enjoining the state proceedings.'" Herrera, 918 F.3d at 1044 (9th Cir. 2019) (internal citation omitted). With respect to Younger's final condition, the Ninth Circuit has clarified that a request for monetary relief, as much as a request for equitable relief, may have such an effect. Gilbertson v. Albright, 381 F.3d 965, 979 (9th Cir. 2004) ("Younger principles may apply to claims for damages under § 1983. Damages suits that turn on a constitutional challenge to pending state proceedings implicate the reasons for Younger abstention as much as equitable or declaratory relief actions because to determine whether the federal plaintiff is entitled to damages . . . the district court must first decide whether a constitutional violation has occurred.").

Still, a plaintiff's request for monetary relief in federal court for alleged misconduct that arises from the state proceeding does not necessarily satisfy that final condition. Herrera, 918 F.3d at 1048-49. In Herrera, the Ninth Circuit considered whether the district court properly abstained from deciding plaintiffs' requests for monetary relief with respect to their § 1983 claims against certain local government defendants for allegedly violating their First, Fourth, Fifth, and Fourteenth Amendment rights. Id. Those claims derived from the government defendants' inspection of plaintiffs' hotel for code violations and their subsequent initiation of a nuisance action against plaintiffs in state court. Id. at 1041-42. The Ninth Circuit affirmed the district court's decision to stay its adjudication of plaintiff's requests for monetary relief with respect to the alleged violations of their First, Fifth, and Fourteenth Amendment rights. Id. at 1050. However, it reversed the district

7

United States District Court
Northern District of California

1   court's stay decision with respect to the alleged Fourth Amendment violations.  Id.  It

2   reasoned that "[t]he Fourth Amendment claims arise from the defendants' search of the

3   motel and subsequent entry onto the property to enforce the abatement proceedings,

4   rather than from a challenge to the state proceeding as a whole or the state's allegedly

5   discriminatory motivation in initiating such action. A ruling in favor of [plaintiffs] on such

6   claims would presumably not invalidate the basis for the code-violation enforcement

7   proceedings, and the Fourth Amendment claims themselves are not at issue in such

8   proceedings." Id. at 1049.  Citing Ninth Circuit precedent, the panel reiterated that "a

9   mere potential for conflict" between the state proceeding and federal court action is

10   insufficient to support abstention.  Id.

11       For the reasons set forth below, the court concludes that abstention is proper with

12   respect to only plaintiff's request for injunctive relief.

13                    **i.     The State Proceedings Qualify under NOPSI**

14       Sonoma County has initiated proceedings in state court against the property.  Dkt.

15   25-4 (Inspection Warrant re 4640 Arlington Ave., Santa Rosa, California).  As shown by

16   the above-cited warrant, Sonoma County seeks to investigate "violations of the Sonoma

17   County Code for unpermitted buildings and illegal cannabis cultivation."  Dkt. 25-4 at 3.

18   This investigation serves as a qualifying civil enforcement action within the scope of

19   Younger.  Herrera, 918 F.3d at 1045 ("The City, a state actor, obtained and executed an

20   inspection warrant, and identified more than four hundred violations of State and local

21   laws on the motel property. Such investigation by the City is characteristic of the state

22   actions that warrant Younger abstention under Sprint.").

23       The procedural fact that Sonoma County has agreed to hold an administrative

24   hearing concerning the citations issued on February 19, 2019 (Dkt. 35 at 4), as opposed

25   to immediately going forward with a nuisance action in the Sonoma County Superior

26   Court, does not change this conclusion.  There is no indication that Sonoma County has

27   dismissed the state court action that it initiated to obtain the July 20, 2020 inspection

28   warrant.  In fact, the return to the inspection warrant (Dkt. 25-5), which details various

United States District Court
Northern District of California

1    additional violations by plaintiff's property, suggests the exact opposite.  At most, then,

2    Sonoma County's decision to provide plaintiff an administrative hearing changes the

3    forum for the proceedings.  It does not terminate them.  Accordingly, however labeled,

4    the state proceedings against the property falls within an applicable NOPSI category.

5              **ii.     The State Proceedings Satisfy the Middlesex Factors**

6              The state proceedings also satisfy the Middlesex factors.  First, as indicated

7    immediately above, those proceeding remain ongoing.  Second, Sonoma County has

8    important governmental interests in deterring and abating violations of its building code.

9    Herrera, 918 F.3d at 1045 ("The state action sought to enforce health and safety

10   provisions, and to abate public nuisances. . . . We have previously held that such

11   nuisance actions implicate important state interests.").  Third, despite the opportunity in

12   both his opposition and supplemental declaration, plaintiff failed to even attempt to show

13   that "state procedural law barred presentation of" his federal constitutional claims in the

14   state proceedings.  Id. at 1046.

15             Even if he had, the Sonoma County Code, through its severability provision,

16   contemplates constitutional challenges at its administrative hearings.  See Son. Cty.

17   Code § 1-6 ("if any . . . section of this code shall be declared unconstitutional or invalid by

18   the valid judgment or decree of a court of competent jurisdiction, such unconstitutionality

19   or invalidity shall not affect any of the remaining . . . sections of this code").  In any event,

20   plaintiff may file a writ of administrative mandamus with the Sonoma County Superior

21   Court requesting it to review any final administrative action.  Cal. Civ. Pro. § 1094.5.  As a

22   court of general jurisdiction, the superior court may consider a federal constitutional

23   challenge.  Bos. Stock Exch. v. State Tax Comm'n, 429 U.S. 318, 321 n.3 (1977) ("We

24   agree . . . that state courts of general jurisdiction have the power to decide cases

25   involving federal constitutional rights where, as here, neither the Constitution nor statute

26   withdraws such jurisdiction.").  Given the above,[3]  the court is satisfied that plaintiff may

27   _____

28   [3] Sonoma County has also acknowledged that plaintiff may raise these challenges in the
     state proceedings.  Dkt. 9 at 16 ("If the administrative procedure moves forward, Ronald

United States District Court
Northern District of California

1   raise any applicable constitutional challenge in the state proceedings.

2           iii.        **Plaintiff's Request for Injunctive Relief Would Practically**

3                       **Enjoin the Enforcement Proceeding**

4           The remaining question, then, is whether the relief sought by plaintiff in this action

5   would "have the practical effect of enjoining the state proceedings.'" Herrera, 918 F.3d at

6   1044.  The court has no trouble concluding that plaintiff's request for injunctive relief

7   satisfies this final condition.  Indeed, based on his prior motion for a temporary restraining

8   order, plaintiff contends that such relief should extend to any search of his property or

9   limitations imposed on its utilities for failure to comply with the county code.  Dkt. 20.

10  Such relief is indistinguishable from that at issue in Herrera.  Herrera, 918 F.3d at 1048

11  ("Certainly [plaintiffs'] request that the court enjoin the City from closing the motel and

12  evicting [plaintiffs] from their personal residence would enjoin directly the state action.").

13  Accordingly, the court will abstain from adjudicating any request for injunctive relief

14  against defendants' enforcement of the property's code violations and, thus, dismisses all

15  such claims from this action.

16          Plaintiff's requests for monetary relief are "not so straightforward." Herrera, 918

17  F.3d at 1048.  As illustrated by Herrera, not all requests for monetary damages arising

18  out of different alleged constitutional violations in connection with the same state

19  proceeding warrant abstention under Younger.  Id. at 1048-50.  That said, the court need

20  not parse through this issue.  Despite multiple opportunities in their briefing, Dkt. 9 at 16;

21  Dkt. 25 at 5-7; Dkt. 35 at 4, defendants omitted any argument showing that plaintiff's

22  requests for monetary relief would practically enjoin the state proceedings.  Independent

23  of that omission, even if the court were to find that plaintiff is entitled to damages for the

24  alleged violations, it is not clear that any such finding would practically enjoin the state

25  proceedings.  Given the above, and that issues pertaining to Younger abstention need

26

27  Cupp will have the opportunity to challenge the penalties that he alleges are improper");
    Dkt. 35 at 4 ("Mr. Cupp will have rights to bring a writ of mandate pursuant to the
28  California Code of Civil Procedure in the event he is not satisfied with the outcome of the
    appeal hearing.").

1   not be decided sua sponte, Herrera, 918 F.3d at 1049 n.3 (acknowledging that plaintiffs

2   "waived on appeal" their argument that the bad-faith exception to Younger abstention

3   applied), the court concludes that plaintiff's requests for monetary relief are not barred by

4   Younger.  Thus, unless those requests are barred by the sovereign immunity doctrine,

5   the court will analyze their viability in this order.

6   **b.    Sovereign Immunity Doctrine Does Not Apply**

7   The Eleventh Amendment generally immunizes states against lawsuits by their

8   own citizens.  Edelman v. Jordan, 415 U.S. 651, 662-63 (1974).  Such immunity extends

9   to state agencies and state officers when the lawsuits against them are "in fact against

10  the sovereign if the decree would operate against the latter." Pennhurst State School &

11  Hosp. v. Halderman, 465 U.S. 89, 101 (1984).

12  Defendants quote plaintiff's allegation that the Individual Defendants are "state

13  actors," to support their suggestion that they are immune under the Eleventh

14  Amendment.  Dkt. 9 at 11.  Perhaps understanding that that suggestion is meritless,

15  defendants fail to advance any substantive argument that they qualify for such status

16  within the meaning of the Eleventh Amendment.  Beentjes v. Placer Cty. Air Pollution

17  Control Dist., 397 F.3d 775, 777 (9th Cir. 2005) ("The [United States Supreme] Court,

18  however, has 'consistently refused to construe the Amendment to afford protection to

19  political subdivisions ***such as counties*** and municipalities, even though such entities

20  exercise a slice of state power.'") (emphasis added). Thus, the sovereign immunity

21  doctrine does not apply.  Given its decisions on defendants' justiciability arguments, the

22  court will now analyze plaintiff's claims as they pertain to his request for money damages.

23  **2.    Remaining Failure to State a Claim Challenges**

24  **b.    Alleged Violations of Federal Law**

25  Plaintiff alleges five claims premised on a violation of federal law.  The first three

26  arise under Title 42 U.S.C. § 1983 and the remaining two arise under § 1985 and § 1986,

27  respectively.  The court analyzes each in turn.

28

1

2

    **i.**  **Plaintiff Failed to Allege a § 1983 Claim for Unreasonable Search**

3    Title 42 U.S.C. § 1983 "provides a cause of action for the deprivation of any rights,

4 privileges, or immunities secured by the Constitution and laws of the United States."

5 Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990). To state a claim under § 1983,

6 a plaintiff must allege the following: (1) he suffered a violation of a right conferred by the

7 Constitution or laws of the United States; and (2) such violation was committed by a

8 person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

9    "To prevail on a section 1983 claim based on the Fourth Amendment, a plaintiff

10 must show that the state actor's conduct was an unreasonable search or seizure."

11 Mendez v. Cty. of Los Angeles, 897 F.3d 1067, 1074-75 (9th Cir. 2018).  "A Fourth

12 Amendment 'search' occurs when a government agent 'obtains information by physically

13 intruding on a constitutionally protected area' . . . or infringes upon a 'reasonable

14 expectation of privacy'" Whalen v. McMullen, 907 F.3d 1139, 1146 (9th Cir. 2018)

15 (internal citations omitted).  The Ninth Circuit has explained that, after United States v.

16 Jones, 565 U.S. 400 (2012), "when the government physically occupies private property

17 for the purpose of obtaining information, a Fourth Amendment search occurs, regardless

18 whether the intrusion violated any reasonable expectation of privacy.  Only where the

19 search *did not* involve a physical trespass do courts need to consult Katz's reasonable-

20 expectation-of-privacy test." Whalen, 907 F.3d at 1147 (italics in the original).

21    "Searches and seizures inside a home without a warrant are presumptively

22 unreasonable."  United States v. Perea-Rey, 680 F.3d 1179, 1184 (9th Cir. 2012).

23 "Because the curtilage is part of the home, searches and seizures in the curtilage without

24 a warrant are also presumptively unreasonable."  Id.  The Supreme Court has noted that,

25 "for most homes, the boundaries of the curtilage will be clearly marked; and the

26 conception defining the curtilage—as the area around the home to which the activity of

27 home life extends—is a familiar one easily understood from our daily experience."  Oliver

28 v. United States, 466 U.S. 170, 182 n.12 (1984).  Lastly, "[i]t is clear that the warrant

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   requirement of the fourth amendment applies to entries onto private land to search for

2   and abate suspected nuisances." Conner v. City of Santa Ana, 897 F.2d 1487, 1490 (9th

3   Cir. 1990).

4         Here, plaintiff failed to state a claim for the unreasonable search of the property.

5   In relevant part, plaintiff alleges that Smith "trespassed," Compl. ¶¶ 20, "searched," id. ¶¶

6   21, 49, 55, 62, and "entered," id. ¶¶22, 91-92, his property on February 15, 2019.

7   Plaintiff adds only that Smith did so without his consent, a warrant, or exigent

8   circumstances, id., ¶¶ 20-22, and that, subsequent to the entry, Smith "issued citations

9   and left." Id. ¶ 23.  These allegations are conclusory and amount to nothing more than

10  formulaic recitation of the elements necessary to substantiate this claim.

11        That said, the court cannot conclude that permitting plaintiff leave to amend this

12  claim would be futile.  In his supplemental declaration in support of his opposition, plaintiff

13  sets forth various additional details concerning the circumstances of Smith's purported

14  February 15, 2019 entry.  Dkt. 30-2.  Among them, plaintiff states that Smith "entered

15  through a posted, no trespassing fence and gate that fronts the boundary of [his] property

16  . . . The fence is 9' tall, constructed of solid wood without gaps, and makes any view of

17  my property from the private road that leads to my property impossible without a person

18  entering upon the property itself." Id. ¶ 1.  Plaintiff adds that Smith then "wandered" his

19  4.33 acres of land, "looked into" certain windows and doors, and "walked through" a barn.

20  Id. ¶ 2.  Plaintiff further states that Smith "approached" and spoke with a third-party hired

21  by plaintiff to paint his property, Daniel St. Clair ("St. Clair").  Id.  While these additional

22  details still overlook the predicate question of *how* Smith entered (e.g., opening the

23  fence's unlocked gate, breaking through the fence's locked gate, or walking through the

24  fence's opened gate), they would cure some of this claim's other factual deficiencies.

25        Given the above, the court will permit plaintiff one opportunity to include these

26  details in his complaint and address any other deficiencies pertaining to this claim.  Since

27  plaintiff failed to state a prima facie claim premised on Smith's allegedly unlawful search

28  and the factual allegations underlying such purported conduct are unclear at this time, the

1    court finds that its resolution of Smith's alternative argument that he is entitled to qualified

2    immunity is premature.  If plaintiff files an amended complaint, Smith may raise that

3    defense once more in an answer or second motion to dismiss.  Lastly, while plaintiff does

4    not formally allege a claim for this purported violation against Sonoma County in his

5    complaint, Compl. ¶¶ 58-64, it appears, based on his opposition (Dkt. 11 at 6-9) and

6    suggestions in his complaint (Compl. ¶¶ 47, 51-57), that he intends to bring such a claim

7    under <u>Monell</u>.  If so, the court will also permit plaintiff one opportunity to clarify such a

8    claim in any amended pleading.

9               ii.        **Plaintiff Failed to Allege a § 1983 Claim for Deprivation of**

10                         **Due Process**

11          "We have emphasized time and again that 'the touchstone of due process is

12   protection of the individual against arbitrary action of government' . . . whether the fault

13   lies in a denial of fundamental procedural fairness . . . or in the exercise of power without

14   any reasonable justification in the service of a legitimate governmental objective." <u>Cty. of</u>

15   <u>Sacramento v. Lewis</u>, 523 U.S. 833, 845-46 (1998) (internal citations omitted).  The Ninth

16   Circuit has remarked that "[t]he fundamental requirements of procedural due process are

17   notice and an opportunity to be heard before the government may deprive a person of a

18   protected liberty or property interest." <u>Conner</u>, 897 F.2d at 1492.

19          Here, plaintiff failed to state a claim for deprivation of due process.  As an initial

20   matter, as shown in the documents attached to defendants' unopposed request for

21   judicial notice, there is no question that Sonoma County provided plaintiff the opportunity

22   to request a hearing.  Both citations included provisions in bold indicating plaintiff's right

23   to appeal their issuance.  Dkt. 10-1 at 2-3.

24          Plaintiff, however, never timely requested a hearing to challenge those citations.

25   To the contrary, as detailed in the communications attached to plaintiff's own declaration,

26   plaintiff made various representations to defendants suggesting that, at least until

27   September 4, 2019, he wished ***not*** to proceed in any administrative process.

28          First, in his February 20, 2019 letter to defendants, plaintiff states the following:

"First of all I do not agree that I have committed any violations of any ordinances, building or zoning code(s), or laws. ***Before I agree to proceed with anything further***, I need you to provide my proof of any valid executed complaint filed . . . I ***then will request*** an administrative hearing on the matter." Dkt. 30-3 at 2 (emphasis added).

Later in that letter, plaintiff goes on to say that "[t]his is my timely notice of any appeal rights we may have ***ONLY after resolution*** of the civil and criminal trespass and violations of our constitutional protections." Id. at 4 (capitalization in the original) (bold added).

Second, in his April 26, 2019 letter responding to Smith's April 19, 2019 letter, plaintiff states that "[y]ou state in your letters that no appeal has been lodged, I respectfully disagree . . . I have again attached a copy of my [February 20, 2019 letter]." Dkt. 30-3 at 15. Plaintiff then goes on to reiterate the same condition attached to his February 20, 2019 letter, stating "[t]his is my second timely notice of any appeal rights we may have ***ONLY after resolution*** of the civil and criminal trespass and violations of our constitutional protections." Id. at 16 (capitalization in the original) (bold added).

Third, in his June 14, 2019 letter to Smith, plaintiff again attempts to attach the same condition to any hearing. Id. at 22 ("This is my third timely notice of any appeal rights we may have ***ONLY after resolution*** of the civil and criminal trespass and violations of our constitutional protections.") (capitalization in the original) (bold added).

Lastly, in his September 4, 2019 letter to Franceschi, plaintiff declines a September 27, 2019 hearing on the pending notice of abatement proceeding. Id. at 28. Instead, he requests a hearing for the "last part of October 2019" and then asks for seven categories of information pertaining to the hearing. Id. Plaintiff further requires that defendants "submit the above at least 30 days prior so I may prepare for the hearing." Id.

Plaintiff attached the above communications to his own supplemental declaration. Given that, he cannot contest the accuracy of their contents. Such content is inconsistent with an essential allegation to plaintiff's theory of procedural deprivation—namely, that he requested a hearing in the time allowed. Plaintiff did not. Instead, he conditioned any hearing on "the resolution" of an unspecified proceeding, Dkt. 30-3 at 4, 16, 22, and his

1    receipt of information for which he showed no legal entitlement, id. at 28.  Given that no

2    allegation can alter these prior representations concerning his request (or lack thereof)

3    for an administrative hearing, the court finds that any opportunity to amend this claim

4    would be futile.  Accordingly, the court dismisses this claim with prejudice.[4]

5              iii.        **Plaintiff Failed to Allege a § 1983 Claim for Excessive**

6                          **Fines**

7              "The Supreme Court has held that a fine is unconstitutionally excessive under the

8    Eighth Amendment if its amount 'is grossly disproportional to the gravity of the

9    defendant's offense.'"  Pimentel v. City of Los Angeles, 966 F.3d 934, 938 (9th Cir. 2020)

10   citing United States v. Bajakajian, 524 U.S. 321, 336-37 (1998). "To determine whether a

11   fine is grossly disproportional to the underlying offense, four factors are considered: (1)

12   the nature and extent of the underlying offense; (2) whether the underlying offense

13   related to other illegal activities; (3) whether other penalties may be imposed for the

14   offense; and (4) the extent of the harm caused by the offense."  Pimentel, 966 F.3d at

15   938 citing United States v. $100,348 in U.S. Currency, 354 F.3d 1110, 1122 (9th Cir.

16   2004) (setting forth the "Bajakajian factors"). "While these factors have been adopted and

17   refined by subsequent case law in this circuit, Bajakajian itself 'does not mandate the

18   consideration of any rigid set of factors.'"  Id. citing United States v. Mackby, 339 F.3d

19   1013, 1016 (9th Cir. 2003).  The Ninth Circuit has "extend[ed] Bajakajian's four-factor

20   analysis to govern municipal fines."  Id.

21             Here, plaintiff failed to state a claim for excessive fines.  As an initial matter,

22   plaintiff failed to proffer any authority supporting the application of the Eighth Amendment

23   to county government civil fines.  Regardless, even if this court were to recognize that

24   Pimentel extends to such fines, plaintiff fails to make any attempt to allege or otherwise

25   argue that the approximately $90,000 in fines imposed by Sonoma County for his

26

27   _____

28   [4] In any event, because Sonoma County has agreed to provide plaintiff an administrative
     hearing to challenge the underlying February 19, 2019 citations, Dkt. 35 at 4, any claim
     premised on the denial of such a hearing appears moot.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  property's purported building code violations are excessive under <u>Bajakian</u>'s four factor

2  analysis.  Instead, in his complaint, plaintiff summarily alleges that the subject fines are

3  "in violation of [his] Eighth Amendment protection," Compl. ¶ 29, issued for "penal

4  purposes," <u>id.</u> ¶ 106, and "punitive," <u>id.</u>  Such conclusory allegations fall far short of

5  showing any of the four factors set forth in <u>Bajakian</u>.

6        In any event, the fines imposed do not appear grossly disproportional to the

7  underlying offense.  The subject violations concern physical structures, which, the court

8  may reasonably infer, could be dangerous.  While $90 per day is not insignificant, neither

9  is the seriousness of those violations.  Moreover, the total fine reflects a balance that has

10  accumulated over the course of a year.  That plaintiff has chosen to allow that amount to

11  compound is his decision and, thus, not relevant to this court's determination under the

12  <u>Bajakian</u> factors.  Given that plaintiff failed to proffer any meaningful argument in support

13  of his Eighth Amendment claim in his opposition or any additional facts in his

14  supplemental declaration, the court finds that any amendment of this claim would be

15  futile.  Accordingly, the court dismisses this claim with prejudice.[5]

16                    **iv.    Plaintiff Failed to Allege § 1985 and § 1986 Claims**

17        Title 42 U.S.C. § 1985 "proscribes conspiracies to interfere with certain civil rights.

18  A claim under this section must allege facts to support the allegation that defendants

19  conspired together. A mere allegation of conspiracy without factual specificity is

20  insufficient."  <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 626 (9th Cir.

21  1988).  Title 42 U.S.C. § 1986 "imposes liability on every person who knows of an

22  impending violation of section 1985 but neglects or refuses to prevent the violation. A

23  claim can be stated under section 1986 only if the complaint contains a valid claim under

24  section 1985."  <u>Id.</u>

25        Here, plaintiff failed to state a claim under § 1985 for conspiracy to violate his civil

26

27  [5] To the extent plaintiff alternatively claims that this fine qualifies as an unconstitutional

28  "taking," Compl. ¶¶ 31-32, the court dismisses such claim with prejudice.  Plaintiff failed
    to proffer any authority in his complaint, opposition, or supplemental declaration to
    support the theory that relief from a fine is properly analyzed under the Takings Clause.

United States District Court
Northern District of California

1  rights.  As an initial matter, plaintiff failed to proffer any non-conclusory allegations in

2  support of this claim.  Rather, he summarily alleges that defendants, who "work in the

3  same office" and "consult with each other," acted "in bad faith" and "in concert" to deny

4  "his appeal and hearing" and file "slanderous documents" against him.  Compl. ¶¶ 33, 37-

5  40, 42, 44, 74-75, 77-79.  As detailed above, however, plaintiff never timely requested a

6  hearing to challenge the February 15, 2019 citations.  As detailed in Section B.2.b.iii.

7  below, plaintiff also failed to state a claim for slander of title.  Thus, plaintiff cannot allege

8  that defendant conspired against him to deprive him of any right.  Since plaintiff failed to

9  state a predicate § 1985 claim, he also failed to state a § 1986 claim.  Given that plaintiff

10 failed to proffer any meaningful argument in support of these claims in his opposition or

11 any additional facts in his supplemental declaration, the court finds that their amendment

12 would be futile.  Thus, the court dismisses these claims with prejudice.

### c.    Alleged Violations of State Law

14 Plaintiff alleges three claims under California law.  The court analyzes each in turn.

### i.    Plaintiff Failed to Allege a Claim for Trespass

16 The Individual Defendants primarily contend that plaintiff's claim for trespass is

17 untimely under the California Government Code § 911.2.  Dkt. 9 at 17.  That contention is

18 misplaced.  In relevant part, § 911.2 provides the following:

19      "A claim relating to a cause of action for death or for injury to
20      person or to personal property or growing crops shall be
        presented as provided in Article 2 (commencing with Section
        915) not later than six months after the accrual of the cause of
21      action. A claim relating to any other cause of action shall be
        presented as provided in Article 2 (commencing with Section
22      915) not later than one year after the accrual of the cause of
        action." Cal. Gov't Code § 911.2(a).
23

24 The court disagrees with the Individual Defendants' assumption that a trespass

25 claim rests on an injury to "person" or "personal property."  Under California law, a claim

26 for trespass rests on injury to real property.  Cal. Civ. Pro. § 338(b) (three-year statute of

27 limitations applies to "an action for trespass upon or *injury to real property*"); Elton v.

28 Anheuser-Busch Beverage Grp., Inc., 50 Cal. App. 4th 1301, 1305 (1996), as modified

(Dec. 11, 1996) ("The common law drew a distinction between two types of actions **for injuries to real property**. If the injury was an immediate and direct result of the act complained of, then **an action for trespass** was the appropriate remedy.") (emphases added).  Thus, § 911.2(a)'s one-year period applies to the trespass claim.

In their opening brief, defendants acknowledged that plaintiff "presented his Tort Claim in person to the County Board of Supervisors on October 23, 2019. . . . His claim expressly refers to the 'Date of Incident' was 02/15/2019." Dkt. 9 at 17.  Given that acknowledgement, plaintiff timely presented his trespass claim.

Still, for the same reasons set forth above with respect to plaintiff's § 1983 claim for an unreasonable search, plaintiff failed to allege adequate facts to state a claim for trespass.  Given the additional facts set forth in plaintiff's supplemental declaration concerning the circumstances of Smith's purported February 15, 2019 entry to the property, the court will permit plaintiff one opportunity to amend this claim as it pertains to Smith.  Because plaintiff's supplemental declaration fails to provide any indication that Willett, Harrington, or Franceschi participated in the unauthorized entry at issue, the court dismisses this claim with prejudice as it pertains to them.  Again, since plaintiff failed to state a prima facie claim for trespass and the factual allegations underlying such claim are presently unclear, the court finds that its resolution of Smith's alternative argument that he is entitled to statutory immunity under California Government Code § 820.2 for discretionary policy decisions is premature.  If plaintiff files an amended complaint, Smith may raise that defense once more in an answer or second motion to dismiss.

### ii.     Plaintiff Failed to Allege a Claim for Land Patent Infringement

Plaintiff alleges that his "land is protected by the highest form of title, US land patent," Compl. ¶ 96, and that defendants "have no lawful right or jurisdiction to infringe or trespass on [his] property rights," id. ¶ 97.

Again, plaintiff failed to state a claim on this basis.  Critically, he does not proffer any authority recognizing the viability of a claim for "land patent infringement."  It appears

United States District Court
Northern District of California

1  that he confuses a "land patent" with a "patent" right.  As a legal matter, such terms are

2  not synonymous.  As defined at Title 35, a "patent" must concern "a new and useful

3  process, machine, manufacture, or composition of matter, or any new and useful

4  improvement thereof."  35 U.S.C. § 101.  Plainly, these requirements relate to an

5  invention, not real property.  Because the court does not see any legal basis to support

6  the subject claim, the court finds that its further amendment would be futile and dismisses

7  it with prejudice.

8                     iii.        **Plaintiff Failed to Allege a Claim for Slander of Title**

9          "Slander or disparagement of title occurs when a person, without a privilege to do

10  so, publishes a false statement that disparages title to property and causes the owner

11  thereof some special pecuniary loss or damage. . . . The elements of the tort are (1) a

12  publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss."

13  Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC, 205 Cal. App. 4th 999,

14  1030 (2012), as modified on denial of reh'g (May 30, 2012) (internal citations omitted).

15          Plaintiff premises this claim on the notice of abatement filed by defendants with the

16  county recorder's office.  Compl. ¶ 100.  In relevant part, that notice provides that

17  Sonoma County "has commenced a proceeding to abate land use violations located at

18  4640 Arlington Avenue, Santa Rosa . . . owned by Ronald Cupp."  Dkt. 30-3 at 38.  The

19  notice further provides that "[t]he land use violations are described in the Notice and

20  Order dated March 11, 2019 . . . The owner of record of the property has been notified of

21  the described conditions by service of the Notice and Order in accordance with law."  Id.

22  Plaintiff summarily contends that the notice is "untrue."  Compl. ¶¶ 101-02.

23          Plaintiff failed to allege a claim for slander of the property's title.  First, plaintiff

24  failed to identify any false statement in the notice.  While the court acknowledges that the

25  notice's reference to "March 11, 2019" appears mistaken (the underlying citations were

26  issued on February 19, 2019), plaintiff fails to proffer any authority that such a ministerial

27  mistake may form the basis for a slander claim.

28          Separately, based on the communications between the parties prior to the notice's

United States District Court
Northern District of California

1  entry, Sonoma County was justified to enter the notice of abatement proceedings.  The

2  February 19, 2019 citations stated that "a Notice of Abatement Proceedings also may be

3  recorded against the Property in the Official Records of Sonoma County."  Dkt. 10-1 at 2-

4  3.  As detailed above, plaintiff did not timely request a hearing to challenge the February

5  19, 2019 citations.  Given that inaction and plaintiff's failure to abate the violations,

6  Sonoma County was entitled to file the subject notice (as warned) and initiate abatement

7  proceedings.  In light of this justification, the court finds that further amendment of this

8  claim would be futile.  Accordingly, the court dismisses it with prejudice.

9  **C.      Motion to Disqualify Analysis**

10         Plaintiff primarily requests that the court disqualify Sonoma County Counsel

11  ("Counsel") from representing both Sonoma County and the Individual Defendants.  Dkt.

12  14 at 1-2.  Plaintiff asserts that there is a "potential conflict of interest" between each set

13  of defendants because Counsel is an employee of Sonoma County.  Id. at 3.  Plaintiff

14  appears to base that potential conflict on the possibility that, to avoid liability, Sonoma

15  County has an interest in showing that the Individual Defendants acted outside the scope

16  of their official duties.  Id. at 3-4.  Conversely, plaintiff posits, the Individual Defendants

17  have an interest in showing that they acted within the scope of such duties.  Id.

18         To support this position, plaintiff relies heavily on the Second Circuit's decision in

19  Dunton v. Suffolk County, 729 F.2d 903 (2d Cir.), amended, 748 F.2d 69 (2d Cir. 1984).

20  In that case, plaintiff sued a police officer defendant for battery after plaintiff purportedly

21  made improper advances toward the officer's wife.  Id. at 905-06.  At trial, the officer was

22  represented by county counsel, who argued in his opening statement that the officer

23  "acted as a husband, not even as an officer."  Id. at 906.  Counsel adopted that theory

24  throughout trial and repeated this thesis in his closing statement.  Id.  The Second Circuit

25  observed that since Monell, "the interests of a municipality and its employee as

26  defendants in a section 1983 action are in conflict."  Id. at 907. It reasoned that:

27             "A municipality may avoid liability by showing that the employee
              was not acting within the scope of his official duties, because
28             his unofficial actions would not be pursuant to municipal policy.

21

1

> The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties." Id.

2

3      The Second Circuit held that the subject conflict between the officer and county

4   "surfaced when the County Attorney stated that [the officer] was not acting under color of

5   state law but rather as an 'irate husband.'"  Id.  In a footnote, the court clarified that "[it]

6   need not create here a per se rule that disqualification is automatic in conflicts of this

7   nature, although considering the overall responsibility of the court to supervise the ethical

8   conduct of the Bar . . . such a rule might indeed be appropriate."  Id. at 908 n. 4.

9      In its opposition, Sonoma County proffers three counterarguments.  First, plaintiff's

10  motion relies on inapplicable law.  Dkt. 23 at 1-4.  Second, courts disfavor motions to

11  disqualify.  Id. at 4.  Third, plaintiff fails to identify any potential conflict.  Id. at 4-5.

12     Here, the court denies plaintiff's request to disqualify counsel.  As a predicate

13  matter, plaintiff failed to show how or why he maintains Article III standing to seek the

14  requested disqualification in the first instance.  Courts recognize that disqualification of

15  counsel on the basis of a conflict of interest generally is proper only if requested by a

16  former client. Canatella v. Stovitz, 2004 WL 2648284, at *2 (N.D. Cal. Sept. 13, 2004).

17  As the party seeking the requested disqualification, plaintiff bears the burden of showing

18  that he would suffer an injury in fact that is causally related to defendants' joint

19  representation.  Id. at 1.  Plaintiff fails to make any such constitutionally required showing.

20     Even if he had, plaintiff's motion fails for other reasons.  First, California law

21  controls the instant motion.  Plaintiff's request relies almost exclusively on out of circuit

22  authority that appears not to apply California law.  Dkt. 14 at 4-6.  Under the traditional

23  disqualification factors considered by California courts,  including, for example,  the

24  financial burden that Smith would incur if he had to replace Counsel, Oaks Mgmt.Corp.,

25  145 Cal. App. 4th at 465, there is good reason to deny the disqualification request.

26     Second, despite Dunton's sweeping language, courts—including the Second

27  Circuit—have clarified that there is no per se rule mandating disqualification where, as

28  here, government counsel represents both the government and an employee in a civil

United States District Court
Northern District of California

United States District Court
Northern District of California

1    rights challenge.  Restivo v. Hessemann, 846 F.3d 547, 580 (2d Cir. 2017) (distinguishing

2    Dunton on the grounds that county defendant "was not a party at trial facing a Monell

3    claim," the county had previously taken the position that it would indemnify its co-

4    defendant police officer, and counsel proffered "a unified theory of defense benefitting the

5    officer and county.") cert denied, 138 S.Ct. 644 (2018)  While it appears the Ninth Circuit

6    has not weighed-in on that question, the Tenth Circuit and Seventh Circuit agree in

7    principle and have limited Dunton to its facts.  Johnson v. Bd. of Cty. Comm'rs for Cty. of

8    Fremont, 85 F.3d 489, 493 (10th Cir. 1996) ("While some courts have held separate

9    representation is required in the face of the potential conflict [citing two district courts] . . .

10   we decline to adopt a per se rule. We hold that when a potential conflict exists because of

11   the different defenses available to a government official sued in his official and individual

12   capacities, it is permissible, but not required, for the official to have separate counsel for

13   his two capacities."), cert denied, 117 S. Ct., 611 (1996); Coleman v. Smith, 814 F.2d

14   1142, 1147-48 (7th Cir. 1987) ("We are troubled by the Second Circuit's broad holding

15   that after Monell an automatic conflict results when a governmental entity and one of its

16   employees are sued jointly under section 1983. We believe that that holding must be

17   read in context with the factual situation present in Dunton.").

18   　　　　Critically, plaintiff failed to identify any peculiarity in this action, or Counsel's

19   representation in it, that is remotely analogous to the lawyer's missteps in Dunton.

20   Rather, plaintiff vaguely asserts that "[t]here is a possibility that there will be differing

21   theories of liability applied to each defendant."  Dkt. 14 at 3.  Perhaps.  However, the

22   court has not made any decision on whether Smith would be entitled to qualified

23   immunity or Sonoma County may be held liable under Monell.  At this juncture, it sees no

24   reason to suggest that either defendants' incentives on litigating those issues are

25   misaligned.  Until that reason becomes evident, the court concludes that disqualifying

26   Counsel from representing Smith is simply premature.

27   　　　　Third, at most, this action amounts to a suit for money damages for trespass and a

28   § 1983 claim premised on an unreasonable search.  As referenced above, plaintiff does

United States District Court
Northern District of California

1   not actually allege either claim against Sonoma County.  Compl. ¶¶ 58-64, 89-94.  Thus,

2   Sonoma County would gain nothing from advancing a theory that Smith acted outside his

3   official capacities on February 15, 2019.  Indeed, in its opposition, Sonoma County took

4   the exact opposite position, acknowledging that "[w]hile [p]laintiff . . . may argue that he is

5   suing [d]efendants, both individually and in their official capacity . . . all of the allegations

6   of improper conduct ***arise out of the employment of each individual defendant***."  Dkt.

7   23 at 3 (emphasis added).  This acknowledgement undermines any suggestion that

8   Counsel has or will litigate this case in a way detrimental to Smith.

9                                                    **CONCLUSION**

10          For the foregoing reasons, the court **GRANTS** defendants' motion to dismiss and

11  **DENIES** plaintiff's motion to disqualify.  To be abundantly clear, the court orders the

12  following with respect to the motion to dismiss:

13  • Any request for injunctive relief is **DISMISSED WITH PREJUDICE**.

14  • The § 1983 claim for violation of plaintiff's due process rights is **DISMISSED WITH**

15     **PREJUDICE**.

16  • The § 1983 claim for "excessive fines" is **DISMISSED WITH PREJUDICE**.

17  • The § 1985 claim for conspiracy is **DISMISSED WITH PREJUDICE**.

18  • The § 1986 claim for neglect is **DISMISSED WITH PREJUDICE**.

19  • The "land patent infringement" claim is **DISMISSED WITH PREJUDICE**.

20  • The slander of property title claim is **DISMISSED WITH PREJUDICE**.

21  • The trespass claim against Willett, Harrington, and Franceschi is **DISMISSED**

22     **WITH PREJUDICE**.

23  • The § 1983 claim against Smith for unlawful search is **DISMISSED WITHOUT**

24     **PREJUDICE**.

25  • The trespass claim against Smith is **DISMISSED WITHOUT PREJUDICE**.

26          Going forward, plaintiff may ***not*** seek to litigate any claims dismissed with

27  prejudice.  Plaintiff may amend his complaint with respect to only the two claims against

28  Smith dismissed without prejudice (bulleted immediately above) and as specified in this

order.  To the extent plaintiff intends to allege a <u>Monell</u> claim against Sonoma County premised on the allegedly unlawful search by Smith on February 15, 2019, plaintiff may also do so.  Otherwise, unless plaintiff obtains leave of court or consent from both Smith and Sonoma County, plaintiff may ***not*** add any new claims or parties to this action.  The court will permit plaintiff **28 days** from the date of this order to file any amended pleading.

      **IT IS SO ORDERED.**

Dated: September 9, 2020

                          /s/ Phyllis J. Hamilton

                          PHYLLIS J. HAMILTON
                          United States District Judge

United States District Court
Northern District of California