UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CUPP,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW SMITH, et al.,<br><br>    Defendants. | Case No. 20-cv-03456-PJH<br><br>**ORDER GRANTING SONOMA COUNTY'S MOTION TO DISMISS, STRIKING REFERENCES TO WICK AS A DEFENDANT, AND GRANTING IN PART PLAINTIFF'S MOTION TO STRIKE SMITH'S AFFIRMATIVE DEFENSES**<br><br>Re: Dkt. Nos. 41, 47 |

Before the court is County of Sonoma's ("Sonoma County") and Tennis Wick's ("Wick") motion to dismiss. Dkt. 41. Also before the court is plaintiff Ronald Cupp's ("plaintiff") motion to strike certain affirmative defenses in defendant Andrew Smith's ("Smith") answer. Dkt. 47. Having read the parties' papers and carefully considered their argument and the relevant legal authority, and good cause appearing, the court hereby **GRANTS** Sonoma County's motion to dismiss, **STRIKES** any references in the first amended complaint ("FAC") to Wick as a defendant, and **GRANTS IN PART** plaintiff's motion to strike Smith's affirmative defenses.

**BACKGROUND**

On May 21, 2020, plaintiff filed the instant action against Sonoma County and various county employees. Dkt. 1. In his complaint, plaintiff brought various claims under Title 42 U.S.C. § 1983 in connection with Smith's purportedly unlawful search of plaintiff's property in Sonoma County on February 15, 2019. Id.

In its September 9, 2020 order, the court dismissed with prejudice all claims against all previously named defendants, except Smith and Sonoma County. Dkt. 36 at

24-25. The then-dismissed defendants included Wick, Margarett Willet ("Willett"), Tyra Harrington ("Harrington"), and Mark Franceschi ("Franceschi"). Compare Id. at 2-3 (listing claims alleged against every defendant) with Id. at 24-25 (listing orders dismissing each claim alleged).

The court permitted plaintiff leave to amend only his § 1983 claim against Smith for unconstitutional search as well as his parallel state law claim for trespass. Id. The court also observed that, although plaintiff did not formally allege a Monell claim against Sonoma County for maintaining a policy of conducting unconstitutional searches of real property, plaintiff suggested such a claim in his complaint and opposition brief. Id. at 14. Given those suggestions, the court permitted plaintiff "one opportunity to clarify such a claim in any amended pleading." Id.

On October 7, 2020, plaintiff filed his operative FAC. Dkt. 38. In it, plaintiff adds allegations attempting to cure the factual deficiencies in his two remaining claims against Smith. Id. ¶¶ 13-35. In particular, plaintiff details the physical barriers surrounding his property and explains how Smith passed those barriers on February 15, 2019 when entering the property. Id. ¶¶ 20-25. Separately, plaintiff added allegations in support of his Monell claim against Sonoma County. Id. ¶¶ 46-51. Lastly, plaintiff also includes a trespass claim against one of the previously dismissed defendants, Wick. Id. ¶¶ 41-45.

On October 21, 2020, Sonoma County and Wick filed the instant motion to dismiss the claims against them. Dkt. 41; Dkt. 43 (errata correcting for defense counsel's mistaken designation of moving defendants). Sonoma County asks that the court dismiss the single Monell claim against it. Sonoma County and Wick ask that the court dismiss the trespass claims against Wick. The court will detail the allegations underlying these claims below.

That same day, Smith filed an answer in response to the amended claims against him. Dkt. 42 ("Ans."). In response, on November 12, 2020, plaintiff filed the instant motion to strike 14 of Smith's 20 affirmative defenses. Dkt. 47. Only a handful of the originally challenged defenses remain at issue. The court will detail the defenses below.

**DISCUSSION**

**A.    Legal Standards**

**1.    Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Rule 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal "is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

As a general matter, the court should limit its Rule 12(b)(6) analysis to the contents of the complaint, although it may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document"). The court may also consider matters that are properly the subject of judicial notice, Lee v. City of L.A., 250 F.3d 668, 688–89 (9th Cir. 2001), exhibits attached to the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims, No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

Lastly, a district court "should grant the plaintiff leave to amend if the complaint

can possibly be cured by additional factual allegations," however, dismissal without such leave "is proper if it is clear that the complaint could not be saved by amendment." Somers, 729 F.3d at 960.

### 2. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that the court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010).

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystem, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). When a court considers a motion to strike, it "must view the pleadings in light most favorable to the pleading party." Uniloc v. Apple, Inc., 2018 WL 1640267, at *1 (N.D. Cal. Apr. 5, 2018). A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be at issue in the action. In re 2TheMart.com, Inc., Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). However, a motion to strike is proper when a defense is insufficient as a matter of law. Chiron Corp. v. Abbot Labs., 156 F.R.D. 219, 220 (N.D. Cal. 1994). Ultimately, the decision "to grant a motion to strike lies within the sound discretion of the district court." Rees v. PNC Bank, N.A., 308 F.R.D. 266, 271 (N.D. Cal. 2015).

### B.  Motion to Dismiss Analysis

In its motion to dismiss, Sonoma County principally argues that plaintiff failed to allege sufficient facts to state a Monell claim against it. Before analyzing that argument, the court will first address plaintiff's renaming of Wick in this action.

#### 1. Wick Is Not a Defendant in This Action

In its opening brief, Sonoma County takes the position that Wick "was not

4

expressly dismissed in the [September 9 Order] but believes that he should have been." Dkt. 41 at 9.  In his opposition, plaintiff asserts that the court has not and should not dismiss Wick from this action.  Dkt. 48 at 13-14.  Both Sonoma County and plaintiff mistakenly assert that the Wick remains a defendant in this action.  He does not.

In his complaint, plaintiff named Wick as a defendant on the following six claims:

(1) Title 42 U.S.C. § 1983 for violation of due process rights.  Compl. ¶¶ 65-72.

(2) Title 42 U.S.C. § 1985 for conspiracy.  Id. ¶¶ 73-79.

(3) Title 42 U.S.C. § 1986 for neglect.  Id. ¶¶ 80-88.

(4) Land patent infringement.  Id. ¶¶ 95-98.

(5) Slander of title.  Id. ¶¶ 99-104.

(6) Excessive fines.  Id. ¶¶ 105-106.

Plaintiff alleged these same claims against various other defendants.  Id.  At the conclusion of its prior order, the court enumerated its decision on each of the claims alleged in the complaint.  Dkt. 36 at 24-25.  The court dismissed all claims in the complaint.  Id. at 24.  More specifically, the court dismissed all six of the above claims ***with prejudice***.  Id.  The court permitted plaintiff leave to amend only the following three claims: (1) the Title 42 U.S.C. § 1983 against Smith premised on an unconstitutional search; (2) a state law trespass claim against Smith; and (3) a Monell claim against Sonoma County premised on Smith's search of the property.  Id. at 24-25.

The court does not see any reason for either side to conclude that Wick remains a party in this action.  When the court dismissed all six claims alleged against Wick with prejudice, it necessarily dismissed Wick from this action.  Moreover, plaintiff did not name Wick as a defendant to the trespass claim in the complaint.  Compl. ¶¶ 89-94.  Thus, it is unclear how or why plaintiff may, in the first instance, justify alleging that claim against Wick in the FAC.  FAC ¶¶ 41-45.  In any event, Wick is not a defendant in this action.

As the court directed in its September 9 order, plaintiff "may ***not*** add any new claims or parties to this action" absent "leave of court or consent from both Smith and Sonoma County."  Id. (emphasis in the original).  Plaintiff failed to satisfy either condition.

5

Accordingly, the court strikes the FAC's references to Wick as a defendant. Separate but relatedly, the court understands that Wick is not listed as a "terminated" defendant on the docket. That omission was a ministerial oversight by the court.

### 2. Plaintiff Failed to Allege a Monell Claim against Sonoma County

"To establish municipal liability under Monell, a plaintiff "must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his or her] constitutional right; and (4) the policy was the moving force behind the constitutional violation." Lockett v. Cty. of Los Angeles, 977 F.3d 737, 741 (9th Cir. 2020). Local government liability under § 1983 may arise "for policies of inaction as well as policies of action." Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014). "A policy of action is one in which the government body itself violates someone's constitutional rights[] or instructs its employees to do so." Id. On the other hand, "a policy of inaction is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" Id.

Stated simply, Sonoma County and plaintiff dispute the sufficiency of the FAC's allegations as they pertain to the Monell claim's policy and causation elements. Dkt. 41 at 10-12; Dkt. 48 at 6-13. The court analyzes the allegations and argument underlying each element in turn below.

#### a. Plaintiff Fails to Allege Sufficient Facts Showing that Sonoma County Maintains a Policy of Conducting Unlawful Searches

Plaintiff fails to allege the policy element of his Monell claim for at least two reasons. First, the bulk of plaintiff's allegations that Sonoma County maintains an actionable policy of conducting unlawful searches rests on FAC paragraphs 47 and 49. Both paragraphs contain numerous pleading deficiencies.

At paragraph 47, plaintiff alleges that Sonoma County "exercises de facto policies" that are contrary to the Constitution and, ultimately, is responsible for the acts of its employees. FAC ¶ 47. This allegation is a legal conclusion. It does not rest on predicate facts substantiating the unlawful nature of the policy alleged.

At paragraph 49, plaintiff enumerates six theories to support his position that Sonoma County maintains a policy to conduct unlawful searches. In particular, plaintiff alleges that Sonoma County engages in the following:

    a. Failing to adequately train, supervise, and discipline its Code Inspectors . . .

    b. Failing to discourage, or actively encouraging, the unlawful use of authority . . .

    c. Failing to admonish, reprimand, discipline, or even investigate constitutional or statutory rights violations by its Code Inspectors . . .

    d. Ratifying the violations of clearly established constitutional protections, including those conferred by the Fourth Amendment, by directing, encouraging, or rewarding Code Inspectors and others . . . . in conducting warrantless searches of private property . . .

    e. Failing to implement proper procedures for obtaining inspection warrants, keeping track of when inspection warrants are sought, executing such warrants; and applying to judicial officers for orders regarding inspection warrants, including the falsification of court records and other documents to justify the otherwise unlawful and unconstitutional behavior of its Code Inspectors . . .

    f. Maintaining a custom, policy, or practice of routinely violating, or encouraging the violation of, the Fourth Amendment rights of landowners in [Sonoma County] by searching their private property without warrants or other legal justification in a scheme to illicitly raise revenue for [Sonoma County] and, thus, unfairly penalize landowners in [Sonoma County]. FAC ¶ 49(a)-(f).

None of the above purported failures, ratifications, customs, policies, or practices rest on any particular fact. Instead, plaintiff bases all six theories of Sonoma County's purported "customs, policies, and practices" on conclusory assertions. When viewing these allegations in the context of paragraphs 46-51, the court finds it clear that the above six theories serve as nothing more than a formulaic recitation of the elements necessary to substantiate a Monell claim.

Second, independent of the above, plaintiff does not rest his municipal policy-related allegations on any reasonable investigation. While plaintiff states in his FAC that he bases the above-referenced theories on his "information and belief," his signed

7

1 verification indicates that he actually bases these theories on what he "believes to be
2 true." Dkt. 38 at 77 ("Those facts and allegations are true and correct to the best of my
3 knowledge, *except* for those facts and allegations which are stated on information and
4 belief. *As to those facts and allegations, I believe them to be true*.") (emphasis
5 added). Plaintiff's mere "belief," without more, falls short of the reasonable inquiry
6 required under Rule 11. Fed. R. Civ. Pro. 11(b)(3) ("By presenting to the court a pleading
7 . . . an attorney or unrepresented party certifies that to the best of the person's
8 knowledge, information, and belief, *formed after an inquiry reasonable under the*
9 *circumstances*: . . . (3) the factual contentions have evidentiary support or, if specifically
10 so identified, will likely have evidentiary support after a reasonable opportunity for further
11 investigation or discovery.") (emphasis added).

12 The court acknowledges that "information and belief" allegations might be proper
13 in very limited circumstances where the evidence necessary to allege a fact is in the
14 exclusive possession of a defendant. However, as plaintiff himself asserts in his
15 opposition, Sonoma County's purported policy of conducting unlawful searches is public
16 knowledge. Dkt. 48 at 6-8. Thus, even if plaintiff had engaged in a reasonable inquiry
17 into the alleged Sonoma County policies, his information and belief allegations are
18 improper here. In light of the two pleading deficiencies identified above, plaintiff fails to
19 allege that Sonoma County maintains a policy of conducting unlawful searches.

20 Plaintiff's attempt to introduce new facts in his opposition does not alter that
21 conclusion. For the first time in his opposition, plaintiff asserts that Smith's entry is not an
22 isolated incident by county employees. Dkt. 48 at 6-7. To substantiate that assertion,
23 plaintiff relies on (1) defendants' unspecified violation of his "private land rights" on July
24 30, 2020 and (2) "at least six" other instances where county employees conducted
25 unconstitutional searches of some unspecified third parties' private land. Id. at 7-8.

26 Plaintiff's first ground is a non-starter. The court is familiar with the events that
27 occurred at the property on July 30, 2020. As detailed by the court in its August 5, 2020
28 order denying plaintiff's motion for a temporary restraining order, the county employees

8

visited the property on July 30, 2020 pursuant to an inspection warrant. Dkt. 29 at 2. Given that warrant (which the court reviewed), plaintiff is hard-pressed to allege in this forum that the July 30, 2020 visit constitutes an actionable search.

Plaintiff's second ground does not fare any better. Contrary to his representation, plaintiff details only four instances when Sonoma County conducted unlawful searches of others' real property. Dkt. 48 at 7-8. Looking beyond the obvious procedural deficiency that plaintiff merely argues these facts, the court finds that the four other incidents identified by plaintiff (taken as true) would not support the inference that Sonoma County maintains a policy of conducting unlawful searches.

The first instance is a legal conclusion. Dkt. 48 at 7 ("On one occasion, a Code Enforcement Inspector with County entered upon an individual's private land without a warrant just because he happened to be in the area. In fact, he had an appointment to inspect an entirely different parcel of land down the road from the affected landowner[] but conducted an illegal search of the affected landowners property.").

The second instance does not refer to any search by county employees. Id. ("On another occasion, a landowner was assured by County's Code Enforcement Inspectors that if the landowner took certain steps to cure discovered violations, County would either not pursue the matter or pursue lesser civil penalties. Yet, the same County officials then took back such assurances at a subsequent hearing, fully penalizing the landowner.").

The third instance rests on the mistaken assumption that Sonoma County was constitutionally required to obtain a warrant before using an aerial drone to view land not visible from the street. Id. ("On yet another occasion, County's Code Enforcement Inspectors flew a drone over the private land of another County resident, again without first securing a warrant, to determine if the landowner was a 'grow operation.'").

The Supreme Court has recognized that the Fourth Amendment does not automatically protect space that authorities may view only from the air. Fla. v. Riley, 488 U.S. 445, 450 (1989) (holding that a landowner had no reasonable expectation of privacy from aerial surveillance of the open space in his residential backyard); California v.

Ciraolo, 476 U.S. 207, 215 (1986) ("The Fourth Amendment simply does not require the police traveling in the public airways at [1,000 feet] to obtain a warrant in order to observe what is visible to the naked eye."). In any event, even if Sonoma County's purported use of a drone to search open backyard spaces were legally actionable, such use qualifies as a distinct policy from that at issue in this case.

The fourth instance rests on facially implausible accusations that Sonoma County employees are taking bribes. Dkt. 48 at 8 ("In addition, [county employees] have on more than one occasion, offered to take bribes from private landowners. In exchange for 'looking the other way' on code violations discovered as a result of illegal searches, [county employees] have requested payment of large sums of money. On at least one occasion, a partial payment was made by a landowner."). Further, given that plaintiff's description of the above-reference incidents of bribery sound in fraud, Rule 9(b) would apply. Plaintiff's description falls short of the specificity demanded by that rule.

The court concludes that the Monell claim fails because plaintiff did not allege sufficient facts showing that Sonoma County maintains a policy of conducting unlawful searches.

### b. Plaintiff Fails to Allege Sufficient Facts Showing that Any Sonoma County Policy Caused the Purported Violation

Independent of plaintiff's failure to allege that Sonoma County maintains an actionable policy, plaintiff separately fails to show how or why such policy serves as the proximate and legal cause of Smith's February 15, 2019 entry. To substantiate the Monell claim's causation element, plaintiff relies on only FAC paragraph 50 and 51. In those paragraphs, plaintiff summarily alleges that:

> At all relevant times herein, all individual Defendants named herein . . . were acting pursuant to the customs, policies, and practices of [Sonoma County] . . .
>
> As a direct and proximate result of the acts and omissions complained of herein, Plaintiff has sustained, and continues to sustain, general and special damages in an amount to be proven at trial. FAC ¶¶ 50-51.

1    Neither of the above allegations purporting to link a Sonoma County policy to the
2 February 15, 2019 entry rest on any particular fact. Again, when viewed in the context of
3 paragraphs 46-51, the court finds that these two allegations serve as nothing more than a
4 formulaic recitation of the causation element necessary to substantiate a Monell claim.

5    The court understands that plaintiff also attempts to raise new causation-related
6 facts in his opposition. In particular, plaintiff argues that:

> At the same time, Wick is the decisionmaker that animates all the other Code Enforcement Inspectors for County, including Smith. Smith would not have committed the constitutional violations alleged in this matter without either the express approval of Wick or the knowledge that Wick would "have his back" after the fact. Smith would not have trespassed unless Wick told him to. Dkt. 48 at 14.

11    Again, putting aside the procedural deficiency that plaintiff fails to allege this fact
12 in his FAC, the court finds that, even if taken as true, this fact would not support the
13 inference that a Sonoma County policy caused the purported constitutional violation at
14 issue. First, plaintiff argues this fact in the conditional. He does not actually state that
15 Wick *did* tell Smith to enter plaintiff's property. Second, the contention that Smith would
16 violate a constitutional right only if Wick supported that violation is conclusory. Plaintiff
17 fails to identify any predicate facts about the relationship between Smith and Wick
18 substantiating that summary assertion. Third, even if plaintiff had proffered such facts, he
19 failed to proffer any authority, see Dkt. 48 at 11-14, showing that a single instance of a
20 county official instructing an employee to take a certain course of action qualifies as "the
21 actionable cause of [the] claimed injury." Bearchild, 947 F.3d at 1150. Indeed, plaintiff
22 omits any reference (in his FAC, opposition, or otherwise) to whether Wick's supposed
23 instruction qualifies as the legal cause or proximate cause (or both) of the entry.

24    The court concludes that the Monell claim separately fails because plaintiff did not
25 allege sufficient facts showing that a Sonoma County policy caused his purported
26 constitutional injury.

27    **3.    The Court Denies Plaintiff Further Leave to Amend**

28    In his opposition, plaintiff requests leave to amend in the event the court "is

inclined to grant the defense motion." Dkt. 48 at 8.  In support of that request, he states that he "can provide further factual allegations" to substantiate his claim that Sonoma County maintains a policy of conducting unlawful searches.  Id.  Plaintiff later adds that his opposition "alleges facts" not formally alleged in his FAC.  Id. at 15.  Plaintiff further requests leave to amend on that additional ground.  Id.

The court denies plaintiff leave to amend for two reasons.  First, the court has, in effect, already permitted plaintiff two opportunities to amend his complaint.  Neither altered the viability of his Monell claim.  On August 10, 2020, the court granted plaintiff's request to file a supplemental declaration (Dkt. 30-2) in support of his original complaint and in opposition to defendants' first motion to dismiss.  Dkt. 34.  Plaintiff filed that declaration after briefing closed on that motion.  Compare Dkt. 18 (reply brief filed on July 20, 2020) with Dkt. 30 (request for notice of supplemental declaration filed on August 8, 2020).  Thus, as part of his supplemental declaration, plaintiff had the opportunity to correct the deficiencies in the Monell claim that Sonoma County identified in its moving papers.  Dkt. 9 at 14-15.  Indeed, to justify his request that the court permit him leave to file the declaration, plaintiff explained that the additional facts proffered in it "go to the crux of [his] allegations in this matter." Dkt. 30 at 2.  The court considered this declaration when ruling on the viability of the claims in the original complaint.  Dkt. 36 at 3-4.  Despite the opportunity to proffer additional facts, plaintiff failed to state a Monell claim against Sonoma County.

Separately, as noted above, the court formally permitted plaintiff another opportunity to allege a Monell claim against Sonoma County following its September 9 order.  Id. at 14.  Despite that subsequent opportunity, plaintiff failed.

Second, and in any event, the court finds that further leave to amend the Monell claim would be futile.  As detailed above, the court considered the purported "facts" identified by plaintiff in his opposition that were not included in his FAC.  Those facts (even if taken as true) would not compel the inference that Sonoma County maintains a policy of conducting unlawful searches.  They also would not show a causal connection

12

between any Sonoma County policy (sufficiently alleged or not) and plaintiff's claimed constitutional deprivation.

The court has expended significant resources on this matter. When accounting for the present order, it has decided a motion for a temporary restraining (Dkt. 20), a motion to disqualify (Dkt. 14), two motions to dismiss (Dkt. 9 and Dkt. 41), and a motion to strike (Dkt. 47). This action is almost a year old. The parties must now enter discovery.

### C.  Motion to Strike Analysis

In his opening brief, plaintiff challenges 14 of Smith's defenses on three distinct grounds. Dkt. 47 at 2. As part of Smith's opposition, Michael King, counsel for Smith ("counsel King"), filed a declaration indicating that he contacted plaintiff concerning the motion to strike. Dkt. 53-1. In his declaration, counsel King states that he "agreed to drop certain defenses" and "amend other defenses." Id. ¶ 3. As attachments to his declaration, Counsel King filed three communications with plaintiff purportedly indicating Smith's intent to modify his answer. Id. ¶ 5. Plaintiff did not formally accept Smith's proposal. Id. ¶ 3.

In his opposition brief, Smith asserts that, after accounting for the defenses that he agreed to withdraw or amend, only three affirmative defenses remain at issue. Dkt. 53 at 2. Those defenses include the following:

- Assumption of risk by plaintiff. Ans. at 7 ¶ 7 (seventh defense).
- Absolute immunity. Id. at 8 ¶ 14 (fourteenth defense).
- Reservation of the right to allege additional, unstated affirmative defenses. Id. at 9 ¶ 20 (twentieth defense).

Plaintiff failed to file a reply in support of his motion. Given that failure, the court finds that plaintiff abandoned his motion's original challenges to Smith's second through sixth defenses, eighth defense, ninth through twelfth defenses, fifteenth defense, and nineteenth defense. The court will consider the remaining three defenses in turn below.

#### a.  Assumption of Risk Defense

As his seventh defense, Smith alleges that plaintiff had "full knowledge" of some

1  unspecified "risks, dangers, and hazards" but nevertheless "voluntarily and with full
2  appreciation of the amount of danger involved in his action . . . assumed the risk of injury
3  and damages to himself." Ans. at 7 ¶ 7.

4        In his opening brief, plaintiff challenges this defense on two grounds.  First, plaintiff
5  argues that Smith fails to allege a sufficient factual basis for this defense.  Dkt. 47 at 6.
6  Second, plaintiff argues that this defense fails as a matter of law because the Ninth
7  Circuit "has long recognized that contributory negligence is a defense only to actions
8  grounded on negligence."  Dkt. 47 at 6.  Plaintiff adds that the Supreme Court "has held
9  that comparative/contributory fault is no bar to intentional wrongdoing."  Id.  In his
10 opposition, Smith explains that, given the claims against him, "there is a possibility that
11 unintentional (negligent) conduct may be at issue in this case."  Dkt. 53 at 5.

12       As this court recently explained, "when analyzing the factual sufficiency of an
13 alleged affirmative defense, courts in this district apply the pleading standard set forth in
14 Twombly and Iqbal."  Cisco Systems, Inc., et. al., v. Chung, et. al., 2021 WL 427293, at
15 *8 (N.D. Cal. Feb. 8, 2021) (citing Perez v. Gordon & Wong Law Grp., P.C., 2012 WL
16 1029425, at *7-8 (N.D. Cal. Mar. 26, 2012) (collecting cases)).

17       Plaintiff is correct that Smith's assumption of risk defense fails that standard.
18 Smith provides only vague allegations about plaintiff's knowledge and appreciation of
19 risks in the events underlying this action.  Smith fails to tie such knowledge and
20 appreciation to any specific event at issue.  He also fails to explain how or why plaintiff, in
21 fact, assumed such risk.  Thus, on the basis of plaintiff's first argument, the court strikes
22 the assumption of risk defense.  Given that plaintiff failed to contest Smith's assertion that
23 this defense might be relevant to the claims against him, the court need not consider
24 plaintiff's second argument.

25         **b.    Absolute Immunity Defense**

26       As his fourteenth defense, Smith alleges that he "acted within the scope of his
27 discretion, in good faith, with due care, and pursuant to applicable rules, regulations and
28 practices, which were reasonably and in good faith believed to be in accordance within

1    the Constitution and laws of the United States, and that Defendant is therefore immune
2    from liability." Ans. at 8 ¶ 14.
3       In his opening brief, plaintiff argues that this defense is "insufficient and
4    superfluous." Dkt. 47 at 2. Plaintiff explains that it is unclear which applicable law Smith
5    references. Id. at 7. Plaintiff further asserts that, absent additional information, this
6    defense is also "redundant of" Smith's thirteenth defense (qualified immunity) and
7    eighteenth defense (statutory immunity under the California Government Torts Act)." Id.
8       In his opposition, Smith argues only that plaintiff "is well aware that the basis for
9    [this defense, among others] is his conduct for failure to obtain permits and abate the
10   nuisances that existed and still exist," which Sonoma County previously communicated to
11   plaintiff. Dkt. 53 at 3-4.
12      The court finds that Smith fails to adequately allege the basis of this defense.
13   First, Smith fails to identify any authority supporting his proffered "absolute immunity"
14   defense. He also fails to describe how such defense differs from his qualified immunity
15   or statutory immunity defenses. Second, even if he had proffered such authority or
16   description, Smith fails to explain how or why *his* conduct falls within the scope of an
17   absolute immunity defense. Lastly, Smith fails to specify the purported "rules,
18   regulations, or practices" referenced in that defense. Accordingly, the court strikes the
19   absolute immunity defense without prejudice.

20                    **c.    Reservation of Rights Defense**

21      As his twentieth affirmative defense, Smith alleges that he "reserves the right to
22   assert additional defenses in the event that discovery indicates it would be appropriate."
23   Ans. at 9 ¶ 20.
24      As plaintiff correctly points out, Dkt. 47 at 7, "[a]n attempt to reserve affirmative
25   defenses for a future date is not a proper affirmative defense in itself." Solis v. Zenith
26   Capital, LLC, 2009 WL 1324051, at *7 (N.D. Cal. May 8, 2009). Smith effectively
27   acknowledges the same. Dkt. 53 at 4 ("[The twentieth defense] is not technically a
28   defense, and Defendant will need to move to amend in any event, if proof changes the

1    pleading."). Accordingly, the court strikes this defense with prejudice. To the extent

2    Smith later seeks to add an affirmative defense, he must move for leave to do so.

### d. Smith Must File an Amended Answer

Rule 8's pleading requirements, as construed by Twombly, Iqbal, and their Ninth Circuit progeny, apply to a defendant's answer. These requirements are black letter law. Thus, the court need not describe them here.

The court permits Smith a single opportunity to amend his defenses for assumption of risk and absolute immunity to meet these requirements. Smith must correct all pleading deficiencies in each such defense, including without limitation those identified above. If Smith fails to do so, the court will strike both defenses with prejudice.

Separately, in his opposition, Smith represents to the court that he has "agreed to amend" his defenses for failure to exhaust administrative remedies, failure to mitigate damages, violation of law by plaintiff, unclean hands, contribution of risks by plaintiff, and proper exercise of police powers. Dkt. 53 at 5 ("Defense counsel agreed to amend affirmative defenses 2, 4, 6, 8, 9, and 15, to some degree; primarily to spell out what Mr. Cupp already knows from his Complaint and attachments."). Given that representation, the court orders Smith to file an amended answer correcting all factual deficiencies in each of the above defenses. Again, when doing so, Smith must comply with the pleading requirements set forth in Twombly and Iqbal.

Lastly, Smith also represents that he has agreed to strike his res judicata, consent, and privilege defenses. Dkt. 53 at 5 ("Nevertheless, defense counsel agreed to drop defenses numbers 3, 10, and 11, for the present, without prejudice to raising those defenses in the future."). Given that representation, the court orders Smith to remove these defenses from his amended pleading.

## CONCLUSION

For the above reasons, the court **GRANTS** Sonoma County's motion to dismiss the Monell claim against it **WITH PREJUDICE**. Dkt. 41. The court also **STRIKES** the FAC's references to Tennis Wick as a defendant. Such references include FAC

16

paragraphs 2, 10, 44, and 45.  As of the date of this order, Sonoma County is also **no longer** a defendant in this action.  Thus, the only remaining defendant is Andrew Smith.

The court **GRANTS** plaintiff's motion to strike Smith's defenses for assumption of risk and absolute immunity.  **Within 21 days of this order**, Smith may file an amended answer accounting for all pleading deficiencies in these two defenses.  In any event, Smith must timely file an amended answer accounting for all such deficiencies in the six defenses that he voluntarily agreed to amend.  In that same answer, Smith must remove his defenses for res judicata, consent, privilege, and reservation of rights.  Absent leave of court or plaintiff's consent, Smith may not otherwise amend his answer.  When filing his amended answer, Smith must provide a redline clearly showing each amendment made to his original answer.  The subject redline must be filed as a separate attachment.

The court will set this matter for a case management conference after the pleadings are settled.

**IT IS SO ORDERED.**

Dated: February 17, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge