ROBERT H. PITTMAN #172154
County Counsel
MICHAEL A. KING #77014
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105A
Santa Rosa, California 95403
Telephone: (707) 565-2421
E-mail: michael.king@sonoma-county.org

Attorneys for Defendant
ANDREW SMITH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD CUPP,

      Plaintiff,

vs.

ANDREW SMITH;

      Defendants.

_____ /

Case No. **4:20-cv-03456 PJH**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND/OR FOR PARTIAL SUMMARY JUDGMENT**

**Rule 56**

**Date:  1-27-2022**
**Time: 1:30 p.m.**
**Courtroom: 3, 3rd Floor**
**Judge: Phyllis Hamilton**

TO PLAINTIFF RONALD CUPP AND HIS COUNSEL OF RECORD:

      PLEASE TAKE NOTICE THAT on January 27, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard in the above-entitled Court located at Oakland, California, Defendant ANDREW SMITH will and hereby do move this Court for Summary Judgment and/or Partial Summary Judgment in relation to the First Amended Complaint filed on  October 7, 2020. (Ex.#1, ECF #38).

      This Motion for Summary Judgment is brought pursuant to Federal Rules of Civil Procedure Rule 56, on the grounds that there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law as to Plaintiffs' various causes of action. This Motion is based on this Notice, Memorandum of Points and Authorities, the

1   supporting Declaration of Michael King and attached exhibits (all attached to King
2   Declaration) and such further evidence and oral argument as may be presented on this
3   matter
4
5   Dated:  December 9, 2021                    ROBERT H. PITTMAN, County Counsel
6
7                                       By:   /s/ Michael A. King
8                                             Michael A. King
                                              Deputy County Counsel
9                                             Attorneys for Defendant
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF CONTENTS

I.      INTRODUCTION   ........................................................................... 7

II      ISSUES PRESENTED ....................................................................... 7

III.    STATEMENT OF RELEVANT FACTS .............................................. 8

    A.  Incident        ...................................................................................... 8

    B. Damages Claimed ................................................................... 11

IV.     LEGAL ANALYSIS ..................................................................... 12

    A.  Legal Standard for Summary Judgment ............................... 12

    B.      Plaintiff Cannot Demonstrate that Andrew Smith Violated the Fourth Amendment
          Due to an Unreasonable Search .......................................... 13

          1.      Initial Attempts to Contact with Owner on Title were Reasonable .......... 13

          2.      No Warrant Was Required for the Inspection Since It Encompassed
              Property in Plain View ................................................. 14

          3.      The Garage Area is Not in the Curtilage of the Dwelling ......... 15

    C.      Andrew Smith Is Further Entitled to Summary Judgment Because He Is Entitled
          to Qualified Immunity ........................................................ 16

          1.  Standard for Qualified Immunity ................................. 16

          2.      No Violation of a Constitutional Right Took Place ................ 18

          3.      There is No Clearly Established Constitutional Right  Prohibiting a Code
              Enforcement Inspection in and around the Garage Under Repair ............ 18

    D.      State Law Recovery is Barred Since Plaintiff Did Not Timely Present
          a Government Code Claim ................................................... 20

    E.      No Trespass Occurred Since Plaintiff Did Not Have Exclusive Possession; and
          the Brief Entry Onto the Property Was Lawful ................... 21

    F.      Defendant Andrew Smith is Immune from Liability for Trespass ....... 22

    G.      Plaintiff Cannot Show a Basis for Recovery of Punitive Damages ....... 22

V.  CONCLUSION        ........................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Creighton*
483 U.S. 635, 640 (1987) ................................................................. 17

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 248 (1986) ................................................................. 12

*Artes-Roy v. City of Aspen*
31 F.3d 958 (10th Cir. 1994) ............................................................ 15

*Ashcroft v. al-Kidd*
563 U.S. 731, 741 (2011). ........................................................... 17, 19

*Brosseau v. Haugen*
543 U.S. 194, 198 (2004) ................................................................. 17

*Carlo v. City of Chino*
105 F.3d 493, 500 (9th Cir. 1997) .................................................... 17

*Celotex Corp. v. Catrett*
477 U.S. 317, 322-23 (1986) ............................................................ 12

*City and County of San Francisco v. Sheehan*
575 U.S. 600, 611(2015) .................................................................. 19

*City of Stockton v. Superior Court*
(2007) 42 Cal.4th 730, 737-738. .................................................... 20

*Davis v. United States*
327 F.2d 301, 303 (9th Cir. 1964) .................................................... 14

*Donohue v. State of California*
178 Cal.App.3d 795, 802 (1986) ..................................................... 20

*Drummond v. City of Anaheim*
661 F.3d 433, 442-43 (9th Cir. 2011) ............................................. 19

*Florida v. Jimeno*
500 U.S. 248, 250 (1991) ................................................................. 13

*Franklin v. Fox*
312 F.3d 423, 437 (9th Cir. 2002) .................................................... 17

*Gygax v. Grule*
1994 U.S. Dist. LEXIS 18114 (N.D. CA 1994) .............................. 15

*Hester v. United States*
265 U.S. 57, (1924), ................................................................... 14, 15

*Hunter v. Bryant*
502 U.S. 224, 229 (1991) ........................................................... 17, 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Lavan v. City of Los Angeles*
693 F.3d 1022, 1027 (9th Cir. 2012) ................................................................. 13

*Lawson v. Tehama Cty.*
LEXIS 185536  (E.D. Ca 2017) ........................................................................ 21

*Lynn v. Sheet Metal Workers Int'l Ass'n.*
804 F.2d 1472, 1478 (9th Cir. 1986) ................................................................. 12

*Malley v. Briggs*
475 U.S. 335, 341, (1986) ................................................................................. 17

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*
475 U.S. 574, 586–587 (1986) ......................................................................... 12

*McBride v. Smith*
18 Cal. App. 5th 1160, 1174 (2018) ................................................................. 21

*Miranda v. City of Cornelius*
429 F.3d 858, 862 (9th Cir. 2005) ..................................................................... 13

*Mitchell v. Forsyth*
472 U.S. 511, 526 (1985) ................................................................................... 17

*Mullenix v. Luna*
577 U.S. 7, 11 (2015) ......................................................................................... 17

*Oliver v. United States*
466 U.S. 170, 177-78, (1984) ...................................................................... 14, 15

*Pearson v. Callahan*
555 U.S. 223, 231(2009) ............................................................................. 17, 18

*People v. Shields*
232 Cal.App.2d 716 (1965) ............................................................................... 19

*People v. Silva*
45 Cal. 3d 604, 627-28, (1988) ......................................................................... 19

*Rancho Viejo v. Tres Amigos Viejos*
100 Cal.App.4th 550, 561 (2002) ...................................................................... 21

*Reichle v. Howards*
566 U.S. 685, 664 (2012) ............................................................................ 17, 19

*Saucier v. Katz*
533 U.S. 194, 206 (2001) ............................................................................ 17, 18

*Scott v. Harris*
550 U.S. 372, 380 (2007) ................................................................................... 12

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*
809 F.2d 626, 630 (9th Cir. 1987) ..................................................................... 12

*United States v. Dunn*
480 U.S. 294 (1987) ............................................................................ 15, 16

*United States v. Hammett*
236 F.3d 1054, 1059  (9th Cir. 2001) ............................................................. 13

*United States v. Jacobsen*
466 U.S. 109, 113, (1984) ........................................................................ 13

*United States v. Jones*
(2012) 565 U.S.400, 411 ......................................................................... 15

*Villiarimo v. Aloha Island Air, Inc.*
281 F.3d 1054, 1061 (9th Cir. 2002) ............................................................. 12

*Watson v. State*
21 Cal.App.4th 836, 844 (1993)................................................................... 20

*Widgren v. Maple Grove Township*
429 F.3d 575, 579-80 (6th Cir. 2005) ............................................................. 15

*Wilson v. Interlake Steel Co.*
(1982) 32 Cal.3d 229, 233 ........................................................................ 21

**Statutes**

*California Civil Code*
§ 3294(a)......................................................................................... 23

*California Government Code*

§815.2 ............................................................................................ 20
§820 .......................................................................................... 20, 22
§821.8 ........................................................................................... 22
§905 ............................................................................................. 20
§910 ............................................................................................. 20
§911.2 ........................................................................................... 20

42 United States Code
§1983 ....................................................................................... 7, 22, 23

**Rules**

Federal Rules of Civil Procedure
  Rule 56........................................................................................ 1, 12

**Constitutional Provisions**

United States Constitution
Fourth Amendment............................................................................ passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.        INTRODUCTION**

The Verified First Amended Complaint for Damages ("FAC"), filed herein by Plaintiff Ronald Cupp ("Plaintiff"), alleges that Defendant Andrew Smith violated rights that Mr. Cupp has under Federal statute and under California law.  The genesis of this case arises from the alleged "trespass" on the property Plaintiff claims that he owned the property that was inspected by Defendant Andrew Smith on February 15, 2019.  (Ex# 1, ECF #38, FAC, p.5, ¶¶20, 21)

The original Complaint, Doc #1, was dismissed against several individual defendants on various grounds. (Ex #2, ECF#36, Order Granting Motion to Dismiss and Denying Motion to Disqualify Counsel).  The only claims that Plaintiff was allowed to amend were the §1983 claim against Defendant Andrew Smith and the trespass claim against Defendant Smith. (Ex.# 2, p. 24). The Court also allowed Mr. Cupp to attempt to allege a Monell claim against only Sonoma County.  (Ex.# 2, p. 25).

The Honorable Phyllis J. Hamilton dismissed the County of Sonoma and Tennis Wick (Director of Permit Sonoma) from this action in her Order issued on February 17, 2021. (ECF #57; pp. 16-17).   By virtue of that Order and the prior Order Granting the Motion to Dismiss the Complaint (Ex.# 2, p. 24: 23-28); the two claims in this case are:

1)  42 U.S.C. § 1983 claim against Andrew Smith for unlawful search;

2)  State law claim for trespass against Andrew Smith.

Plaintiff counsel recently confirmed that these are the only remaining claims.  (Ex. #12 Ronald Cupp deposition 11/30/21; p. 173: 6-19).

Defendant Andrew Smith requests that the Court dismiss this pleading against him with prejudice, and grant him judgment against Plaintiff Ronald Cupp.

**II        ISSUES PRESENTED:**

1.        Whether Plaintiff's claim for unreasonable search under the Fourth Amendment, is barred since Plaintiff had no reasonable expectation of privacy in the areas inspected by Defendant Smith on February 15, 2019?

2.      Whether Plaintiff's claim for unreasonable search is  under the Fourth Amendment, is barred since Defendant Smith has qualified immunity for his actions?

3.      Whether the claim of trespass under California law is barred due to failure to timely file a claim pursuant to the California Government Code?

4.      Whether the claim of trespass under California law is barred by immunities granted Defendant under the California Government Code?

5.      Whether the claims of Plaintiff are barred under the undisputed facts in this matter?

III.    STATEMENT OF RELEVANT FACTS

A.  Incident

This action arises out of a County code enforcement visit and inspection by Defendant Andrew Smith on February 15, 2019, of the property commonly known as 4640 Arlington Ave, Santa Rosa, California.

Andrew Smith learned of possible violation of building code violations based upon a complaint of unpermitted construction at the property described as "vacant".  (Ex. #3 complaint form, 1/28/2019; Ex. #7, Andrew Smith deposition, p. 42: 2-5).  Before going to the property, Andrew Smith sent a courtesy letter on January 29, 2019, requesting the inspection, to the owner on title with the County Recorder – Federal National Mortgage Association ("Fannie Mae").  (Ex. #4 Courtesy letter; Ex. #7,  pp.42: 15 -43: 1)  Federal National Mortgage became owner of the property on 4/13/2013 from a foreclosure sale. (Ex. #6 Trustee's Deed). Plaintiff alleges that he "owned the land since 1989 (Ex #1, FAC   ¶42, p. 9), which is not accurate since he lost it in foreclosure, and was not the record owner on title again until February 25, 2019.  (Ex. #5, Quitclaim Deed).

Having no response to the courtesy letter, Andrew Smith went to the property to attempt to contact someone to get information about the property ownership and introduce himself.  (Ex.#7, Andrew Smith Depo pp. 65: 17 – 66: 1)  A financial institution was listed as owner so he had no idea any person owned the property; but he was not surprised to see someone working there based upon the information he had.  (Ex.#7, p. 65: 2- 17).

On Arlington Ave., the pavement ends and gravel road starts near the garage on the west side of 4640 Arlington Ave. Further along the gravel road is a commercial tree nursery.  (Ex.# 7, pp. 46: 7 - 47: 1; Ex. #8 aerial photo 14).  There is no gate or restriction to public access. (Decl Andrew Smith ¶ 4).

Upon arrival at the property Andrew Smith noticed a new perimeter fence in the process of  being built that exceeded Building Code height limits, and for which no permit had been requested.  (Decl. Andrew Smith ¶ 5, Ex. #8, photos 4, 5).  As he approached the garage building located on Arlington Ave., he noticed lumber and construction debris in front of the garage and a satellite dish.  (Ex.#7, p. 53: 14-25; Ex. #8, photos 4,5). He heard the sounds of someone working in the interior of the garage. (Ex.#7, p.65: 14-17;  Decl. Andrew Smith ¶5)

There were gaps in the fence between the garage and the beginning of the newly constructed fence without a gate on either side.  (Ex.#7, pp. 53:12 to 55: 20; Ex #8, photos 4,5 8, 9)  There was an open door on the side of the garage in plain view and only a short distance from the gap in the fence.  (Ex#8, photo 5, Ex. #7 , pp. 53: 22 to 54: 18). After no response to his announcing his presence, Andrew Smith approached the open door to make contact with the person(s) inside.  (Decl. Andrew Smth ¶5).  Defendant Smith introduced himself and was able to talk briefly with the worker. (Decl. Andrew Smith ¶5, Daniel St. Clair ¶4 ).

The worker for Ronald Cupp was named Daniel St. Clair.  Mr. St. Clair advised Andrew Smith that he was not the owner. He was doing some remodel and repair work for the owner, at 4640 Arlington Ave, Santa Rosa, California. When Andrew Smith contacted him, he was installing flooring in the garage to be used as additional living unit.  (Decl. St. Clair ¶¶2, 3; Ex.# 12, Ronald Cupp depo p. 153: 8-15)

Andrew Smith introduced himself, asked a few questions, gave Daniel St. Clair his card, and took a photo from the doorway.  The two parties were never outside the garage building together, (Decl. Daniel St. Clair, p. 2 ¶4; Decl. Andrew Smith, ¶5) Neither Mr. Smith, nor Mr. St. Clair raised his voice or argued.  There was no one else present on the property at the time to the knowledge of either Mr. St. Clair or Mr. Smith. (Decl. St. Clair p. 2 ¶4; Decl. Andrew Smith ¶7) Ronald Cupp was not present. He was 15-20 minutes away. (Ex.# 11, Cupp depo, p. 57: 18-24).

1  Mr. Cupp claims he was living in the single-family dwelling with very few furnishings. (Ex.#12,

2  pp. 151: 22 – 152: 10; p.205: 13-19). He admits no one was living in the garage, which he calls

3  the "granny unit".  (Ex #12, pp. 164: 25 to 165: 7)

4      After talking to Daniel St. Clair, Andrew Smith walked around to the other side of the

5  garage, and entered an opening in the fence. While next to the garage, he took some photographs

6  of the lumber and construction products and debris. These objects were visible in plain view from

7  the street.  (Declaration of Smith ¶6; Ex.#8, photos 4, 5, 7, 8, 9).

8      The area next to the uninhabited garage was separated from the single-family dwelling

9  structure by another wooden fence.  (Ex. #8, photos 3, 6, 7, 9) Although Mr. Smith could see the

10  windows of the dwelling from his location by the garage, he never left the area of the garage

11  during his inspection. (Decl. Andrew Smith ¶6)  He took photographs to document what he

12  observed and where he was physically located at the property. (Ex. #8, Photos 4-10). There were

13  no "No Trespassing" signs anywhere Mr. Smith entered. (Ex. #8, Photos 4-10).

14      After his brief discussion with Daniel St. Clair, and brief photographic documentation of

15  the conditions, Andrew Smith handwrote two (2) Notice & Orders of code violations and posted

16  them on the garage.  (Ex. #8, Photo 9; Ex.#7 Smith Depo, p. 58: 4-6)  He also caused to be

17  mailed, copies of the Notice & Orders to Federal National Mortgage as the owner on title of 4640

18  Arlington Ave. (Ex. #9, Notice & Orders)

19      A friend of Mr. Cupp and apparent silent co-owner of the property, Antonio Cruz, claims

20  to have been at 4640 Arlington Ave at the time of the inspection by Mr. Smith. He is not clear

21  exactly what he was doing (Ex. # 14, Antonio Cruz Depo. p. 45: 1-24), but Ronald Cupp has

22  testified that Mr. Cruz wanted to buy the property to grow hemp.  (Ex.# 11, Cupp depo, p. 59: 21

23  – 60: 10)

24      Mr. Cruz stated he was on the northeast side of the house when he heard two people

25  arguing, then he left.  (Ex. # 14, Cruz Depo. p. 26: 5-24; p. 30: 2-10)  Antonio Cruz never talked

26  to either Daniel St. Clair or Andrew Smith. (Ex. #14: p. 41: 14-17).   His vantage point on the

27  side of the house was blocked by the fence surrounding the garage. (Ex.# 14: p. 36:  6-11)  The

28  two people were on the other side of the fence near the garage/granny unit. (Ex.# 14:  pp. 37: 22 –

38: 3)  they were 50,60, 70 feet away from him. (Ex.# 14: p. 38: 11-15)  He never got closer ( Ex. # 14: p.  41: 4-7)   He only listened for a short time without hearing what was said, and then returned behind the house to leave the property.  (Exhibit 14: pp.42: 12-20; 43: 1-14 )

Mr. Cupp never took out any permits before commencing the construction/remodel work at 4640 Arlington Ave, Santa Rosa. (Decl. Andrew Smith ¶5). The only party, who owned 4640 Arlington Ave, Santa Rosa on February 15, 2019, as far as the County of Sonoma was aware, was Fannie Mae. (Ex.#18, photos 4, 5, 6 and 9; Ex. #7, p. 65: 2-7)

Ronald Cupp wrote a letter to Andrew Smith and other addressees on February 20, 2018 (sic) that was received on February 27, 2019. (Ex 13)    Andrew Smith referred the letter to management. (Ex. #7, Smith depo p. 30: 16-19).

On October 23, 2019, Ronald Cupp filed a Government Claim pursuant to California Government Code §910, et seq with Defendant COUNTY with respect to the state law claims made herein.   (Ex.#1, FAC p. 8, ¶34; Ex. #12 Cupp Depo, pp. 208: 17-209: 20; Ex. #15a). The claim was denied as untimely since it was sent 8 months after the stated date of incident. (Ex.#15b; Ex.# 12: p. 210: 2- 18)  Mr. Cupp then sent a letter arguing a different date applied to his untimely Government Claim.  (Ex.#15c) There is no question that Mr. Cupp knew the requirements of the Government Claims Act from his prior claim experience and the form itself. (Ex. #12; Cupp depo. pp. 208:  17 – 209:20; p. 212: 13-15; Ex. #15a)

Mr. Cupp claims that he requested an appeal of the Notice & Order in his letter dated February 20, 2018.  Any such request was conditioned on numerous other events taking place; it was not an actual request for an appeal to take place following the procedure in the Sonoma County Code. In any event, a hearing was provided. (Ex.#17).

**B.  Damages Claimed**

It is completely unclear exactly what is being claimed as damages arising out of the February 15, 2019 inspection.  There was no physical harm to the property.  Plaintiff has listed hundreds of thousands of dollars as damages arising from the administrative hearing. (Ex. #16) An Administrative Hearing was held on December 11, 2020 and January 22, 2021.  The violations from February 15, 2019, were affirmed by the Hearing Officer. (Ex.# 17, p. 1, item 1).

1    IV.    **LEGAL ANALYSIS**

2           A.    **Legal Standard for Summary Judgment**

3           Summary judgment is properly granted when no genuine and disputed issues of material

4    fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant

5    is clearly entitled to prevail as a matter of law. FRCP 56; *Celotex Corp. v. Catrett*, 477 U.S. 317,

6    322-23 (1986). A "genuine" issue of material fact exists if there is sufficient evidence for a

7    reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477

8    U.S. 242, 248 (1986). A fact is "material" if it is relevant to an element of a claim or a defense,

9    the existence of which may affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pacific Elec.*

10   *Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).

11          Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v.*

12   *Sheet Metal Workers Int'l Ass'n*, 804 F.2d 1472, 1478 (9th Cir. 1986). Nor will uncorroborated

13   allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v.*

14   *Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002). The non-moving party must instead

15   set forth "significant probative evidence tending to support the complaint." *T.W. Elec Serv., Inc.*

16   809 F.2d at 630-631.

17          At the summary judgment stage, facts must be viewed in the light most favorable to the

18   nonmoving party only if there is a "genuine" dispute as to those facts.  *Scott v. Harris*, 550 U.S.

19   372, 380 (2007).  As the Supreme Court has emphasized, "[w]hen the moving party has carried its

20   burden under Rule 56, its opponent must do more than simply show that there is some

21   metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a

22   rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*,

23   citing (*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986)

24   (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will

25   not defeat an otherwise properly supported motion for summary judgment; the requirement is that

26   there be no *genuine* issue of *material* fact."  *Scott*, 550 U.S. at 380 (emphasis in original); *Liberty*

27   *Lobby, Inc.*, 477 U.S. at 247-48.  Further, "when opposing parties tell two different stories, one of

1  which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

2  should not adopt that version of the facts for purposes of ruling on a motion for summary

3  judgment."  *Scott*, 550 U.S. at 380-381.

4

5  **B.  Plaintiff Cannot Demonstrate that Andrew Smith Violated the Fourth Amendment Due to an Unreasonable Search.**

6  **1.  Initial Attempts to Contact with Owner on Title were Reasonable**

7  The *Fourth Amendment* "protects two types of expectations, one involving 'searches,' the

8  other 'seizures.' A 'search' occurs when the government intrudes upon an expectation of privacy

9  that society is prepared to consider reasonable…"  *Lavan v. City of Los Angeles,* 693 F.3d 1022,

10  1027 (9th Cir. 2012*)*, (quoting *United States v. Jacobsen, 466 U.S. 109, 113, (1984))*. Whether a

11  search or seizure is at issue, the relevant inquiry under the *Fourth Amendment* is one of

12  reasonableness—"[t]he *Fourth Amendment* does not proscribe all state-initiated searches and

13  seizures; it merely proscribes those which are unreasonable." See *Florida v. Jimeno,* 500 U.S.

14  248, 250 (1991)*.* (citations omitted). Whether a seizure is unreasonable under the Fourth

15  Amendment depends upon the particular facts and circumstances. See *Miranda v. City of*

16  *Cornelius,* 429 F.3d 858, 862 (9th Cir. 2005).

17  The inspection for possible building code violations was commenced only after contact

18  with the owner on title with the County Recorder, which was Federal National Mortgage Assn

19  until February 25, 2019.  (Ex.#3) Defendant Andrew Smith had an understanding that the

20  property was vacant, with no one residing there.

21  The actual observations from the street of the unpermitted fence and debris from

22  unpermitted construction confirmed the report of unpermitted construction.  It was clearly

23  reasonable to take a direct path to the open door in the garage.  This route was open to any

24  delivery person including someone delivering lumber or construction material.

25  Even a law enforcement officer may approach a home to initiate consensual contact with

26  the occupants (the so-called "knock and talk" rule), even though doing so puts the officers within

27  the curtilage of the home. *United States v. Hammett* 236 F.3d 1054, 1059  (9th Cir. 2001);

28  "[A]bsent express orders from the person in possession [of the property] . . . there is no rule of

private or public conduct which makes it illegal per se . . . for anyone openly or peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle.'" *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1964).

The area, which Mr. Smith entered, was not close to the residence or in its curtilage. Defendant Smith first made contact with the occupant of the garage doing the unpermitted work, only then walking to the other side of the garage. That area was also open to anyone attempting to contact the owner or his/her employee conducting repairs.  No inspection took place other than the area immediately surrounding the uninhabited garage that was being remodeled and only after contact with Daniel St. Clair.   The inspection consisted of visual observations and taking several photographs.

### 2.  No Warrant Was Required for the Inspection Since It Encompassed Property in Plain View

One recognized exception to the warrant requirement pertains to the "open fields" doctrine. In *Hester v. United States,* 265 U.S. 57, (1924), the Supreme Court held that the right to privacy does not extend to a person's open fields. *Id. at 59*. The Court instructed that "the special protection accorded by the *Fourth Amendment* to the people in their 'persons, houses, papers, and effects' is not extended to the open fields. The distinction between the latter and the house is as old as the common law." *Id.* (citation omitted). The Supreme Court confirmed the continued vitality of the "open fields" doctrine in *Oliver v. United States*, 466 U.S. 170, 177-78, (1984). The Court stated in *Oliver*: "We conclude, as did the Court in deciding *Hester v. United States*, that the government's intrusion upon the open fields is not one of those 'unreasonable searches' proscribed by the text of the *Fourth Amendment*." *Id. at 177*.  The term "open fields" is somewhat of a misnomer in that "an open field need be neither 'open' nor a 'field'" and "may include any unoccupied or undeveloped area outside of the curtilage." Id. at 180 n.11.

In *Oliver v. United States*, the Supreme Court found that there was no reasonable or legitimate expectation of privacy in open fields, the officers' actions in entering such open fields without a warrant or probable cause did not violate the Constitution. Because privacy for outdoor activities conducted in fields only extended to the area immediately surrounding the home.

1    The United States Supreme Court has held that for the purposes of the Fourth

2 Amendment, an area immediately surrounding a house or dwelling is "curtilage" if it harbors the

3 "intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Oliver*

4 *v. United States,* Id. at 180.

5    As was stated in *Hester v. United States*, supra, 265 U.S at p. 59:  "[The] special

6 protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and

7 effects,' is not extended to the open fields. The distinction between the latter and the house is as

8 old as the common law." In short, because an open field is not an area protected by the Fourth

9 Amendment, an officer's physical intrusion into such an area is "of no Fourth Amendment

10 significance." *United States v. Jones* 565 U.S.400, 411 (2012).

11    It was held by the Sixth Circuit that a warrantless inspection conducted by the township's

12 zoning administrator did not amount to a Fourth Amendment violation, even though that inspector

13 drove past a metal gate and several "No Trespassing" signs to observe the property owner's house.

14 *Widgren v. Maple Grove Township*, 429 F.3d 575, 579-80 (6th Cir. 2005). The court noted that

15 the administrator did not violate the Fourth Amendment, even though he entered the Plaintiff's

16 property, because there "is no constitutional difference between police observations conducted

17 while in a public place and while standing in the open fields." Id. at 579. See also *Artes-Roy v.*

18 *City of Aspen*, 31 F.3d 958 (10th Cir. 1994) (building inspector who actually entered a house to

19 issue stop work order did not violate the Constitution).  In *Gygax v. Grule*, 1994 U.S. Dist. LEXIS

20 18114 (N.D. CA 1994), where plaintiff alleged that the County employees actually drove past

21 multiple "no trespassing" signs, this Court granted a motion to dismiss on an unreasonable search

22 claim and dismissed the pendent state law trespass claims.

23    **3.  The Garage Area is Not in the Curtilage of the Dwelling**

24    Assuming that Plaintiff will suggest that the area around the garage somehow had an

25 expectation of privacy, he has admitted it was not inhabited. In *United States v. Dunn*, 480 U.S.

26 294 (1987),the Court provided guidance, saying that, "curtilage questions should be resolved with

27 particular reference to four factors: (1) the proximity of the area claimed to be curtilage to the

28 home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature

of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by."  In *Dunn*, the Court said that the location of a barn, being 60 yards from the home and 50 yards outside of the fence, which completely encircled the home, suggested that it was outside the home's curtilage.

In the case before the Court, on February 15, 2019, (1) the area next to the garage closest to the house is still approximately 20-25 feet to the closest corner of the dwelling that had all the appearance of being unoccupied, confirming the report that the property was vacant; (2) the side of the garage closest to the dwelling was completely separated by a fence; (3) the area where the inspection took place in the immediate vicinity of the garage was being used to store cabinets, debris, and materials for construction, and (4) the area on both sides of the garage was completely open to a delivery person or anyone passing by, with no signs prohibiting entrance on either side of the garage.

In *Dunn*, the Court said that although the open area was surrounded by a fence, the home was surrounded by a different fence; and that second fence was obviously intended to demark a specific area of land immediately adjacent to the house that is readily identifiable as part of the house.  The Court said that law enforcement officials had evidence that the area was not being used for intimate activities of the home, namely that it was being used to store large amounts of phenylacetic acid (used in the illegal manufacture of drugs) and that it had a very, very strong smell.   In *Dunn*, the area was not protected at all from observation by those standing in open fields. Although agents did peer into a barn that was arguably protected by the Fourth Amendment, any such observation from open fields was not protected. (This is the "plain view doctrine", though it is not labeled as such in *Dunn*.)

### C.  Andrew Smith Is Further Entitled to Summary Judgment Because He Is Entitled to Qualified Immunity

#### 1. Standard for Qualified Immunity

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a

//

1  reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson*

2  *v. Callahan*, 555 U.S. 223, 231).

3      A right is "clearly established" if "every reasonable official would have understood that

4  what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 685, 664 (2012);  *Ashcroft v.*

5  *al-Kidd,* 563 U.S. 731, 741 (2011). "The unlawfulness must be apparent." *Anderson v. Creighton*

6  (Creighton), 483 U.S. 635, 640 (1987). "Existing precedent must have placed the statutory or

7  constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Put

8  simply, qualified immunity protects "all but the plainly incompetent or those who knowingly

9  violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, (1986); *Mullenix v. Luna*, 577 U.S. 7, 12

10  (2015).

11      "If an official could reasonably have believed her actions were legal in light of clearly

12  established law and the information she possessed at the time, she is protected by qualified

13  immunity." *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002). Qualified immunity is an

14  extremely deferential standard that "gives ample room for mistaken judgments by protecting all

15  but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S.

16  224, 229 (1991). Qualified immunity shields a police officer from suit when he or she makes a

17  decision that, even if constitutionally deficient, reasonably misapprehends the law governing the

18  circumstances he or she confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004), citing

19  *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

20      Qualified immunity is more than a mere defense to liability; it is "an entitlement not to

21  stand trial or face other burdens of litigation," and "is effectively lost if a case is erroneously

22  permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  Qualified immunity

23  encourages officials to exercise their discretion without the fear of liability when the state of the

24  law is unclear or their actions are reasonable under the totality of the circumstances. *Carlo v. City*

25  *of Chino*, 105 F.3d 493, 500 (9th Cir. 1997).

26      The United States Supreme Court established a two-step application of qualified

27  immunity:  (i) Based on the fact taken in the light most favorably to the party asserting injury, did

28

1   the officers' conduct violate a constitutional right?; and (ii) if there was a constitutional violation,

2   could the officers nevertheless have reasonably but mistakenly believed that their conduct did not

3   violate a clearly established constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 - 205 (2001).

4   The Supreme Court subsequently held that while the *Saucier* two-step test is still permitted, it is

5   no longer mandatory and that courts need not use the two-step process and has discretion to grant

6   qualified immunity if either step is satisfied. *Pearson v. Callahan*, 555 U.S. 223 (2009). If no

7   constitutional right has been violated, there is no need for inquiries concerning qualified

8   immunity.  *Saucier*, supra, 533 U.S. at 201. The standard is whether the officers acted reasonably

9   under the circumstances at the time of the conduct and not whether a reasonable alternative can be

10   offered in hindsight years later. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

11          Defendant Smith is clearly entitled to qualified immunity since he reasonably believed his

12   actions were legal in light of clearly established law and the information he was aware of at the

13   time.

14                    **2.   No Violation of a Constitutional Right Took Place**

15          Ronald Cupp is claiming a violation of his Fourth Amendment rights against unreasonable

16   search; yet he was not even the owner of record on the property at the time. He certainly had not

17   announced to the public that he was staying in the upstairs portion of the dwelling in a single

18   room and not using any other part of that structure as a residence.

19          Plaintiff also does not have a constitutional right to a reasonable inspection of the area

20   immediately surrounding the uninhabited garage by a code enforcement inspector who merely

21   took photographs of that area, and posted written notices.  The inspection and photographing

22   under the circumstances, was not only reasonable but also allowed under prevailing law.

23                 **3.   There is No Clearly Established Constitutional Right Prohibiting
24                       a Code Enforcement Inspection in and around the Garage Under Repair**

25          Even more on point, there is no <u>clearly established</u> case authority that the inspection

26   conducted in the manner pursued by Andrew Smith, is prohibited by the Fourth Amendment.  In

1  fact, the case law supports the reasonableness of the inspection under the circumstances.

2  Defendant Smith made no effort to walk anywhere other than to the open garage door, then to the

3  other side of the garage in the fenced portion to take photographs.

4       A case need not be directly on point, "but existing precedent must have placed the

5  statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658 (2012).

6  "This exacting standard gives government officials breathing room to make reasonable but

7  mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate

8  the law." *City and County of San Francisco v. Sheehan,* 575 U.S. 600, 611(2015).  In *Sheehan*,

9  qualified immunity was granted police officers who entered the home of a disabled plaintiff and

10  physically subdued her.

11

12       The Supreme Court has repeatedly warned that, for purposes of qualified immunity,

13  clearly established law must not be established at a high level of generality.  *Ashcroft v. al-Kidd,*

14  *supra,* 563 U.S. at 742.  "Qualified immunity is no immunity at all if 'clearly established' law can

15  simply be defined as the right to be free from unreasonable searches and seizures." *Sheehan,*

16  *supra,* 575 U.S. at 613.

17       A court may look to whatever decisional law is available to ascertain whether the law is

18  clearly established for qualified immunity purposes, including decisions of state courts, other

19  district courts and even unpublished district court decisions. *Drummond v. City of Anaheim,* 661

20  F.3d 433, 442-43 (9th Cir. 2011).  Limited inspection of code violations in plain sight is a well-

21  recognized and approved method to establish notice and an opportunity to contest or correct.

22       The Fourth Amendment prohibits unreasonable searches and seizures, not trespasses."

23  *People v. Silva*, 45 Cal. 3d 604, 627-28, (1988) (holding that even if the officers' entry onto the

24  land was a technical trespass, there was no violation of the Fourth Amendment), cert. denied, 488

25  U.S. 1019 (1988).  See also *People v. Shields,* 232 Cal.App.2d 716 (1965), in which a detached

26  garage was not considered an extension of a defendant's home. The officers in *Shields* even

27  knocked at the front door of the house first, before looking over a fence in the rear of the

28  residence.

### D.  State Law Recovery is Barred Since Plaintiff Did Not Timely Present a Government Code Claim

Plaintiff's cause of action for Trespass, like any state law claims for damages, is brought pursuant to the *California Government Code* §§820 and 815.2.  Plaintiff's Government Claim was not timely filed by Plaintiff.

*California Government Code § 910*  sets forth the necessary contents of a tort claim against a public entity, requiring that it state the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted and provide a "general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." The filing of a proper claim pursuant to *Government Code* § 910 is a condition precedent to the maintenance of an action against the governmental entity caused by tort. *Donohue v. State of California,* 178 Cal.App.3d 795, 802 (1986)

The court in *Watson v. State*, 21 Cal.App.4th 836, 844 (1993), described the requirement for claim filing and the limitations on what may be included in a complaint based on a claim as follows: "'[E]ach cause of action must [be] reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim."

The failure to present a timely claim to City bars a state law damages claim. (*Calif. Gov. Code*, §§ 905, 911.2; *City of Stockton v. Superior Court* 42 Cal.4th 730, 737-738 (2007). As Mr. Cupp knows from past filings and from his allegation in the First Amended Complaint, ¶42, a claim must be timely filed within 6 months of the date of incident. Mr. Cupp filed his claim on October 23, 2019, clearly stating the date of incident as February 15, 2019.  This claim for trespass is barred.

In the present case, Mr. Cupp is a highly litigious and savvy claimant who had prior experience with completing Government Claims involving a public entity. He knew which form to use and knew from experience that the claim must be sent to the Board of Supervisors, but it

would likely be handled by the County Risk Department.  In his claim for the trespass on February 15, 2019, he expressly stated that the claim was for trespass and arose out of a "Date of Incident" of February 15, 2019.  The Claim is dated October 23, 2019, and delivered to the Risk Dept. on that day. It was properly denied as untimely.

The lack of a government claim has been found in U.S. District Court to doom a state law trespass claim since the Fourth Amendment is not co-extensive with common law trespass. *Lawson v. Tehama Cty*., LEXIS 185536  (E.D. CA 2017)

### E.  No Trespass Occurred Since Plaintiff Did Not Have Exclusive Possession; and the Brief Entry Onto the Property Was Lawful

Trespass is an invasion of the plaintiff's interest in the exclusive possession of land. *Wilson v. Interlake Steel Co.* (1982) 32 Cal.3d 229, 233. "The essence of the cause of action for trespass is an unauthorized entry onto the land of another. [citations] Thus, in order to state a cause of action for trespass a plaintiff must allege an unauthorized and tangible entry on the land of another, which interfered with the plaintiff's exclusive possessory rights. [citations]" *McBride v. Smith*, 18 Cal. App. 5th 1160, 1174 (2018).  The Court in *McBride* sustained a demurrer dismissing the cause of action for trespass because Plaintiff had an easement on the property, but not exclusive possession.

A trespass is an invasion of a property owner's right to exclusive possession of land, as by entry on it without authority or without the owner's consent. *Rancho Viejo v. Tres Amigos Viejos*, 100 Cal.App.4th 550, 561 (2002). In *Rancho Viejo*, the entry was lawful based upon statutory authority, just as Defendant Smith's brief entry was lawful since the areas were in plain view and his purpose was to contact the owner.

Plaintiff claims that he was the "owner" of the property at the time of the inspection on February 15, 2019.  He was recovering the property from foreclosure and entered into agreement with Fannie Mae in December 2018.  While he claims to have had a quitclaim deed before the inspection, none was recorded with the County of Sonoma until after Defendant's visit to 4640

Arlington Ave.  Until that date, Fannie Mae still had an ownership interest and right to possession before Ronald Cupp became owner.

California law requires that Plaintiff be in exclusive possession of the property, which he clearly did not have until February 25, 2019, at the earliest.  Similarly, Ronald Cupp may have had the right to enter the property of 4640 Arlington Ave, on the day of the inspection of February 15, 2019, but he did not have exclusive possession of the property until the deed was recorded on February 25, 2019.

### F.  Defendant Andrew Smith is Immune from Liability for Trespass

While other statutory immunities may apply, at a minimum, Andrew Smith is immune from liability for trespass under California Government Code §§821.8 and 820.4

Government Code §821.8, states:
A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law. Nothing in this section exonerates a public employee from liability for an injury proximately caused by his own negligent or wrongful act or omission.

Government Code §820.4, states:
A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

Defendant Andrew Smith entered onto the property to contact an occupant, walking from across an open area towards an open door on a garage. After making contact with the woker, Defendant Smith walked to the other side of the same garage and took a few photographs. These areas were open to anyone, and were in plain view from the road. These actions and the posting of the Notice & Orders were all performed in the execution of Defendant's responsibilities to check on a complaint if code violations.

### G.  Plaintiff Cannot Show a Basis for Recovery of Punitive Damages

Punitive damages are recoverable in an action under 42 U.S.C. § 1983 only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461

1  U.S. 30, 56 (1983). Under California law, punitive damages are authorized if a plaintiff can show

2  by clear and convincing evidence that a defendant acted with oppression, fraud, or malice. *Calif.*

3  *Civ. Code* § 3294(a).

4        The limited scope of inspection, the minimal physical evidence (photographs) of the area

5  around the garage, the prompt notice to the owner and any occupants, by physically posting the

6  Notice & Orders at the Property and subsequently mailing them, all were performed within a

7  short time and without any information to indicate that the property was being used as a

8  residence. There is absolutely no evidence of evil intent or malice.

9  **V.     CONCLUSION**

10       For the reasons stated, with reference to the §1983 claims, no conduct was unreasonable,

11 the very limited search was conducted in open areas around the detached garage, and Andrew

12 Smith is entitled to qualified immunity.  The entry onto the property authorized by law is not a

13 trespass against any interest of Ronald Cupp.  Even if a trespass claim existed, it is barred by the

14 failure to file at timely claim and by statutory immunities.

15

16 Dated: December 9, 2021                     ROBERT H. PITTMAN, County Counsel

17

18                                        By:   /s/ Michael King

19                                             Michael A. King

20                                             Attorneys for Defendant

21                                             Andrew Smith

22

23

24

25

26

27

28