ERIC G. YOUNG, ESQ. (SBN 190104)
**YOUNG LAW GROUP**
411 Russell Avenue, Second Floor
Santa Rosa, California 95403
Tel.:  707.527.3637
Fax:  707.520.7272
Email:  eyoung@younglawca.com

Attorneys for Plaintiff
RONALD CUPP

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CUPP, | CASE NO. 4:20-cv-03456PJH |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| ANDREW SMITH; et al., | |
| Defendants. | Date: February 3, 2022 |
| | Time: 1:30 p.m. |
| | Dept.: Courtroom 3, 3rd Floor |
| | Judge: Hon. Phyllis J. Hamilton |

COMES NOW Plaintiff RONALD CUPP ("Cupp") and respectfully submits the following Memorandum in Opposition to Defendant ANDREW SMITH's ("Officer Smith") Motion for Summary Judgment, or Partial Summary Judgment ("the Motion"):



## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 4

II. STATEMENT OF FACTS .................................................................................. 6

   A. 4640 Arlington Avenue, Santa Rosa, California ........................................... 6

   B. Cupp Notified the County of Sonoma of His Private Property Rights ................. 7

   C. Cupp Posted No Trespass Warning Signs; the Fencing at the Arlington Avenue Property . 8

   D. Officer Smith's February 15, 2019 Warrantless Inspection and Search of the Arlington Avenue Property ........................................................................................... 9

   E. On February 20, 2019, Cupp Notified the County of Sonoma by Certified Mail That Officer Smith Committed the Civil Tort of Trespass on February 15, 2019 ......................... 11

III. LEGAL ARGUMENT ....................................................................................... 11

   A. Summary Judgment Standard, Generally ...................................................... 11

   B. Officer Smith Searched the Arlington Avenue Property; the Reasonableness of the Search is a Question for the Jury ....................................................................... 12

   C. Officer Smith is Not Entitled to Qualified Immunity as a Matter of Law ........... 16

     (1)  The Two-Pronged Qualified Immunity Analysis ..................................... 16
     (2)  When Viewed in the Light Most Favorable to Cupp, Officer Smith Violated Cupp's Clearly Established Constitutional Rights Under the Fourth Amendment When He Entered and Inspected the Arlington Avenue Property Without an Inspection Warrant .. 18

   D. Cupp's State Law Trespass is Not Barred for Failure to Submit a Timely Government Tort Claim ........................................................................................................ 19

   E. Officer Smith is Not Entitled to Statutory Immunity Under California Law .......... 22

   F. Officer Smith Believed He Was Held to a Higher Standard Than a Police Officer When Conducting a Search; Yet, He Still Conducted a Warrantless Search of Cupp's Property, Justifying Cupp's Claim for Punitive Damages .................................................. 25

   G. Objections to Officer Smith's Declaration in Support of Motion ....................... 26

IV. CONCLUSION ................................................................................................. 27



# **TABLE OF AUTHORITIES**

**Cases**

Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)...............................................................16
Blair v. Superior Court, 281 Cal.App.3d 221, 225 (2018).............................................19
Boyd v. Benton County, 374 F.3d 773, 781 (9th Cir. 2004) ...........................................16
Camara v. Municipal Court, 387 U.S. 523 (1967)..........................................................18
Castro v. County of Los Angeles, 833 F.3d 1060, 1066 (9th Cir. 2016).........................15
City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 259-71 (1981)............................24
City of Stockton v. Superior Court, (2007) 42 Cal.4th 730, 744-745..............................21
Coughlin v. Tailhook Ass'n, 112 F.3d 1052, 1056 (9th Cir. 1997)................................24
Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005)........................................................24
Ellins v. City of Sierra Madre, 710 F.3d 1049, 1064 (9th Cir. 2013).............................17
Hamby v. Hammond, 821 F.3d 1085, 1091 (9th Cir. 2016)...........................................17
James River Ins. Co. v. Hebert Schenk, P.C., 523 F.3d 915, 920 (9th Cir. 2008)............11
Johnson v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1168 (9thCir. 2013)..............15
Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).............................................................16
Kisela v. Hughes, 138 S. Ct. 1148, 1153 (9th Cir. 2018) ..............................................15
LaLonde v. County of Riverside, 204 F.3d 947, 953 (9th Cir. 2000)..............................15
LSO, Ltd. v. Stroh, 205 F.3d 1146, 1158 (9th Cir. 2000)................................................16
Monell v. New York City Dept. of Soc. Services, 436 U.S. 658 (1978)...........................24
Morgan v. Woessner, 997 F.2d 1244, 1255 (9th Cir. 1993)...........................................24
Nicholson v. City of Los Angeles, 935 F.3d 685, 695 (9th Cir. 2019)............................15
Ogborn v. City of Lancaster, 101 Cal.App.4th 448 (2002) ...........................................22
Orn v. City of Tacoma, 949 F.3d 1167 (9th Cir. 2020)..................................................15
Phillips v. Desert Hosp. Dist., 49 Cal.3d 699, 706 (1989) ............................................19
Robinson v. United States, 165 F.2d 752 (6th Cir. 1948 ...............................................13
Shafer v. County of Santa Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017) ....................16
Simon v. City of New York, 893 F.3d 83, 96-97 (2d Cir. 2018)......................................16
Smith v. Wade, 416 U.S. 30, 49 (1983)........................................................................24
Stockett v. Association of Calif. Water Agencies Jt. Powers Ins. Auth., 34 Cal.4th 441, 446 (2004)......19
Taylor v. United States, 286 U.S. 1 (1931)...................................................................13
Torres v. City of Los Angeles, 548 F.3d 1197, 1210 (9th Cir. 2008)..............................15
U.S. v. Oaxaca, 233 F.3d 1154 (9th Cir. 2000) ...........................................................12
United States v. Jones, 565 U.S. 400 (2012) ................................................................11
United States v. Thomas, 726 F.3d 1086, 1092-93 (9th Cir. 2013).................................11
Walker v. United States, 125 F.2d 395, 396 (5th Cir. 1942)..........................................13
White v. Pauly, 137 S. Ct. 548, 552 (2017)...................................................................16
Wilkins v. City of Oakland, 350 F.3d 949, 955 (9th Cir. 2003)......................................15
Wolf v. Colorado, 338 U.S. 25, 27 (1949)....................................................................17
Wood v. Riverside Gen. Hosp., 25 Cal.App.4th 1113, 1116-1118 ................................19

**Statutes**

Cal. Civ. Code, § 3294...............................................................................................25
Cal. Govt. Code, § 910.8............................................................................................21
Cal. Govt. Code, § 911...............................................................................................21
Cal. Govt. Code, § 915(a)(1)-(2) ................................................................................20
Cal. Govt. Code, §§ 910, 910.2..................................................................................19
Fed R. Civ. Proc. 56(a)..............................................................................................10



**<u>Other Authorities</u>**

U.S. Const., Amend. IV .................................................................................................. 17



# I. INTRODUCTION

In his Motion, Officer Smith attempts to frame this case of unreasonable search and unlawful trespass by a government official as presenting five issues. See, the Motion, p. 7-8. Cupp contends the issues are:

1. Whether Officer Smith acted unreasonably when he entered upon, inspected, and photographed Cupp's private, residential property on February 15, 2019 with an inspection warrant, and without Cupp's consent or exigent circumstances?

2. Whether Officer Smith violated Cupp's clearly established constitutional rights under the Fourth Amendment on February 15, 2019?

3. Whether Cupp's February 20, 2019 certified letter to County officials substantially complied with California's Government Tort Claims Act such that Cupp's state law trespass claim is not barred for failure to submit a timely government claim?

4. Whether Officer Smith is entitled to immunity under California Government Code sections 821.8, 820.4, or any other state statutory immunities?

5. Whether Cupp is entitled to punitive damages for Officer Smith's warrantless intrusion onto Cupp's private, residential property?

On the first and second issue, Officer Smith's warrantless search of Cupp's private, residential property was *per se* unreasonable under the Fourth Amendment, and Officer Smith admits the search was not justified by any exigency or consent. Officer Smith's attempt to invoke either the "plain view" or "open fields" doctrine is erroneous. Officer Smith inspected the interior of a detached garage after entering Cupp's property from a private road through a section of a 93-inch tall fence that was not yet completed. Officer Smith could not see what was occurring inside the garage until he had already intruded onto Cupp's property to begin his



investigatory search. Thereafter, he continued to inspect other parts of Cupp's property and took many photographs of exterior and interior portions of the property. An inspection warrant was required under clearly established precedent to conduct this search. Officer Smith is also not entitled to qualified immunity because, on February 15, 2019, clearly established precedent required an inspection warrant.

On the third issue, only five days after the warrantless search, February 20, 2019, Cupp mailed a certified letter to Officer Smith, Tennis Wick (the Director of Permit Resources & Management for the County of Sonoma), the Sonoma County Board of Supervisors, and the County's Risk Management Dept. Cupp explained that the "tort" of "trespass" occurred on February 15, 2019 by Officer Smith at Cupp's property. He provided the location. He also stated that various constitutional rights had been violated. He stated that "an intentional tort and damage" occurred as a result of "Officer Smith entering Cupp's property and walking around structures and house without permission or authorization looking for violations." The timely delivery of this letter to the governing body – the County Board of Supervisors – complied with Government Code sections 910, 910.2 and constituted substantial compliance with California's Government Tort Claims Act because it was sufficient to put the County on notice to investigate and evaluate the claim. In any event, the County never notified Cupp that his February 20, 2019 letter was insufficient, as required by law, thereby waiving this defense.

On the fourth issue, the statutory immunities in California's Government Code do not shield Officer Smith from liability for violation Cupp's Fourth Amendment rights. Moreover, Government Code sections 820.4, 821.8 do not exonerate Officer Smith's trespass under the facts of this case. Finally, although Officer Smith did not assert in his Motion any immunity pursuant to Government Code section 820.2 (arguably, waiving that provision) – even had he raised it – he would still be incorrect. Section 820.2 does not confer immunity for ministerial



actions undertaken at an operational level such as a building code enforcement officer like Officer Smith carrying out the inspection of an individual's private property without an inspection warrant.

Finally, on the fifth issue, Officer Smith has testified that he believed he was held to a higher warrant standard than a police officer when conducting searches. Nevertheless, having taken no steps to obtain an inspection warrant, knowing he lacked consent, and admitting there no exigencies, Officer Smith intruded upon Cupp's property twice, inspected both the exterior and interior of a garage at the property that is part of the curtilage, and took photographs inside and out. Officer Smith determined that he "had the right" to enter Cupp's property without an inspection warrant. These actions demonstrate conscious disregard for Cupp's Fourth Amendment rights, justifying punitive damages.

When the facts of this case are viewed in the light most favorable to Cupp – as they must be – summary judgment is inappropriate. Therefore, the Court should deny the Motion.

## II. STATEMENT OF FACTS

### A. <u>4640 Arlington Avenue, Santa Rosa, California</u>

On February 15, 2019, Cupp was the legal owner of 4640 Arlington Avenue, Santa Rosa, California ("the Arlington Avenue property" or "the property"), even though his deed was not yet recorded. Cupp Dec., ¶¶ 2-3, Exh. "A" and "B." Cupp resided in an upstairs bedroom in the single family residence located at the property, which he had occupied since approximately January 10, 2019. Cupp Dec., ¶ 4.

The Arlington Avenue property is a 4.33 acre parcel of land located in a rural setting; however, the property is not farmland. Cupp Dec., ¶ 5. The property is accessible only by a dead end road that becomes a private road just before it reaches the western property line. Cupp Dec., ¶ 5. The point where the private road begins used to have an access gate, which was



removed, but the point where the private road begins can still be seen today because the County-maintained asphalt ends at that point. There is also a County-posted road sign that says, "End." Today, this point remains marked by a yellow warning sign that says "End." Cupp Dec. ¶ 6, Exhibit "D"; Smith Dep. Exh. 19. The property is landlocked on three sides by other properties – the northern, southern, and eastern sides. The western side of the property abuts Arlington Avenue. Cupp Dec., ¶ 9.

The property has several structures on it, including a two-story, single family residence, an awning structure located approximately 19-20 feet from the western side of the residence, and a 484 square feet, converted detached garage/"granny unit" located approximately twenty-five feet from the southwest corner of the residence. Cupp Dec., ¶ 7.

The granny unit has a false garage door facing Arlington Avenue. Only two doors allow entrance to the granny unit. A 3-feet-wide door is located on the south side of the garage near the southeastern corner of the granny unit approximately thirty feet beyond the property western property line; the other door is located on the north side. Neither door faces Arlington Avenue, and the only windows on the garage also do not face the private road. Cupp Dec., ¶ 8.

In addition to these structures, a row of barns run nearly the length of the southeast side of the property. Cupp once used these structures as a workshop and for storage. Cupp Dec., ¶ 10.

**B. <u>Cupp Notified the County of Sonoma of His Private Property Rights</u>**

As far back as April 2013, Cupp had notified the County of Sonoma by certified mail that he asserted U.S. land patent rights and other privacy rights at the Arlington Avenue property. With the certified mailing, which included the County of Sonoma's Board of Supervisors, Cupp included copies of no less than fourteen "Notices of Posting" asserting various private property and other constitutional or statutory rights. Each notice ended with the phrase, in large all caps



font and bold letters - "**DO NOT TRESPASS — KEEP OFF**." This mailing also included a nineteen-page "legal brief" of sorts, which also asserted various private property rights. Cupp Dec., ¶ 20; King Dec., Exh. 4, Plaintiff's First Amended Complaint, Exh. "B."

When he first mailed these notices, the County of Sonoma's Risk Manager determined Cupp was making a Government Tort Claim, issued a Notice of Insufficient Claim on May 7, 2013, and then a Notice of Rejection of Claim on June 11, 2013. King Dec., Exh. 4, Plaintiff's First Amended Complaint, Exh. "C." Although the County operated under a mistaken belief about Cupp's mailing, the County knew Cupp's idiosyncrasies - he would not tolerate trespassers or warrantless searches of the Arlington Avenue property.

**C. Cupp Posted No Trespass Warning Signs; the Fencing at the Arlington Avenue Property**

The Arlington Avenue property has always had exterior and interior privacy fencing around it. When Cupp's brother, Randall, lived at the property, he kept Rottweilers. He constructed a 5-feet tall, interior fence around the residence to keep the dogs in. In 2010, one of the dogs jumped the interior fence and escaped. Randall then constructed an interior fence that was six feet, eight inches tall. Cupp Dec., ¶ 11; Randall Cupp Dec., ¶¶ 4-5.

There was also an existing 7-feet tall solid, wooden exterior privacy fence enclosing the west and north sides of the property, which had been in place for more than twenty-five years. Cupp Dec., ¶ 12.

At the same time Cupp mailed the "Notices of Posting" to the County of Sonoma in April 2013, he also posted them on the exterior fence at the Arlington Avenue property, making it clear to anyone who came to the property not to trespass and that entry onto the subject land was permitted only with a warrant. Cupp Dec., ¶ 20. Mail carrier and delivery people left



packages at the fence or gate at the northwest corner of the granny unit, which is the path of travel to access both the residence and the granny unit. Cupp Dec., ¶¶ 14-15.

In 2018, when Cupp retook possession of the property, the existing exterior fence was in disrepair and needed to be replaced Cupp began the installation of a solid wooden exterior privacy fence along the entire western edge of the property facing Arlington Avenue. The fence was, and is, ninety-three inches tall. All but an 8-feet wide gap in this fence at the southwestern corner of the granny unit was completed as of February 15, 2019. Cupp Dec., ¶ 12.

Along the northern edge of the property was an 8-feet tall solid wooden fence. Along the southern edge of the property is a "wire and wood"-style fence that already existed as of February 15, 2019. Along the eastern edge of the property is a "post and wire" fence that also was already existing fencing as of February 15, 2019. In other words, the Arlington Avenue property was entirely fenced, except for the 8-feet wide gap, on February 15, 2019. Cupp Dec., ¶¶ 16-17.

**D. Officer Smith's February 15, 2019 Warrantless Inspection and Search of the Arlington Avenue Property**

Officer Smith first became aware of the Arlington Avenue property after receiving a confidential complaint about construction at the property. King Dec., Exh. 3; Cupp Dec., Exh. H, Smith Dep. Part 1, 40:8-11, 41:3-5, 42:2-5. On January 29, 2019, Officer Smith wrote a courtesy letter to Federal National Mortgage ("Fannie Mae") mistakenly believing Fannie Mae still owned the property. King Dec., Exh. 4; Cupp Dec., Exh. H, Smith Dep. Part 1, 42:11-19, 65:2-7. A couple of weeks passed, and on February 15, 2019, Officer Smith went to the Arlington Avenue property by himself for the first time. Cupp Dec., Exh. H., Smith Depo Part 1, 43:5-7.



According to his deposition testimony, when Officer Smith arrived at the property, he parked his vehicle on the private road south of the granny unit. He exited his vehicle and first walked through the 8-feet wide, unfinished gap in the 93-inch tall solid wood fence on the western edge of the property. It is undisputed that Officer Smith entered the property without a warrant of any kind. He lacked Cupp's (or anyone else's) consent. Officer Smith has also admitted there were no exigent circumstances existing at the property when he visited on February 15, 2019.

After he walked through the 8-feet wide gap in the otherwise solid wooden fence, Officer Smith approached the door at the southeastern corner of the granny unit some thirty feet beyond the property line. See, Harris Dec., submitted herewith. Officer Smith claims this door was open, he saw a toolbox, and could hear "construction noises." There, he encountered Daniel St. Clair whom Cupp had hired to do some interior work on the granny unit that did not require a permit. Officer Smith spoke with St. Clair. He photographed the interior of the granny unit.

Next, and while still on the property, Officer Smith wandered over to 74-inch tall solid wood access gate at the northwestern corner of the granny unit, which is the true path of travel to access the property. Officer Smith claims the access gate was also open at the time. He walked through the access gate, observed remnants from the new fence installation, some cabinets, and other items. Officer Smith took more photographs from inside the property, believing he was on the property when he did so.

Officer Smith then wrote up two "Notices & Orders" and posted them at the property. One notice was a use violation for "change of occupancy – convert garage to dwelling unit." The other notice was for "construction without a permit;" specifically, "remodel vacant single family dwelling and barn – no permit" and "garage conversion to dwelling unit – remodel." King Dec.,



Exh. 9. At his deposition, and in his declaration, Officer Smith denied walking up to the residence or the barns, even though he violated Cupp for remodeling both of these structures. Officer Smith then left the property.

**E. On February 20, 2019, Cupp Notified the County of Sonoma by Certified Mail That Officer Smith Committed the Civil Tort of Trespass on February 15, 2019**

On February 20, 2019, only five days after the warrantless inspection and search of the Arlington Avenue property by Officer Smith, Cupp mailed identical certified letters to Officer Smith; Tennis Wick, the Director of Permit Resources & Management Department for the County of Sonoma, the Sonoma County Board of Supervisors, and the County's Risk Management Department. Cupp Dec., ¶ 22; King Dec., Exh. 13. While not a model of precision, Cupp's letter advised the County that Officer Smith had committed the "tort" of trespass at the Arlington Avenue property. Cupp stated that his constitutional rights were violated. He stated that "an intentional tort and damage" occurred as a result of "Officer Smith entering Cupp's property and walking around structures and house without permission or authorization looking for violations." Cupp demanded a resolution.

At the time, Cupp believed he was making a government claim against the County, and the County never informed Cupp by any type of communication that the letter was an insufficient government claim. Cupp Dec., ¶ 22. After a time, the County also recorded a notice of abatement lien against the Arlington Avenue property. Cupp Dec., ¶ 23.

## III. LEGAL ARGUMENT

**A. Summary Judgment Standard, Generally**

Summary judgment is a limited remedy. It is only appropriate if "there is not genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. Proc. 56(a). The Court may not grant summary judgment if a "reasonable juror, drawing



all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

favor." *James River Ins. Co. v. Hebert Schenk, P.C.,* 523 F.3d 915, 920 (9th Cir. 2008).

**B.** **Officer Smith Searched the Arlington Avenue Property; the Reasonableness of the Search is a Question for the Jury**

In *United States v. Thomas*, 726 F.3d 1086, 1092-93 (9th Cir. 2013), the Ninth Circuit

discussed how the Supreme Court's decision in *United States v. Jones*, 565 U.S. 400 (2012),

altered the *Katz* "reasonable-expectation-of-privacy" focus and stated that case law now directs

"if the Government obtains information by physically intruding on persons, houses, papers, or

effects, a 'search' within the original meaning of the Fourth Amendment has 'undoubtedly

occurred.'" In *Jones*, government officials installed a GPS-tracking device to the underside of a

***vehicle located in a public parking lot***, ***and then utilized the device to monitor***

***the vehicle's movements***. The Court held that when "[t]he Government ***physically***

***occupied private property for the purpose of obtaining information***," a physical

intrusion occurred and constituted a search under Fourth Amendment principles. *Jones*, 565

U.S. at 404-11, emphasis added.

In his Motion, admitting again that he entered Cupp's property on February 15, 2019,

Officer Smith argues:

> "The area, which Mr. Smith entered, was not close to the residence or in its
> curtilage....That area was also open to anyone attempting to contact the owner or
> his/her employee conducting repairs. No inspection took place other than the
> area immediately surrounding the uninhabited garage that was being remodeled
> and only after contact with Daniel St. Clair. The inspection consisted of visual
> observations and taking several photographs." See, Motion, 14:4-10.

This argument is factually incorrect and ignores other, important facts. First, Officer

Smith entered the property twice on February 15, 2019. He first gained entry by walking

through an 8-feet wide gap – not a gate - in an otherwise solid wood fence that is ninety-three

inches tall running the length of the streetside of the property. The area Officer Smith entered



was not "open to anyone" and to suggest otherwise disregards the significance of the extensive privacy fence altogether.

Furthermore, a reasonable person who confronts a 93-inch tall solid wooden privacy fence running the length of private property facing a private road would, first and foremost, have their view blocked as to what conditions might exist inside the property, such as potentially dangerous dogs or other hazards. A reasonable person would conclude the owner of the property wanted unannounced visitors to keep out, and that entry onto the property was both unwelcome and unwise. A reasonable person might call out if they heard someone on the property, as Officer Smith claims he did, but it does not necessarily follow that a reasonable person would go ahead and intrude thirty feet into the property.

The search and inspection was also far more intrusive than Officer Smith characterizes. Officer Smith intruded well beyond the western property line to the door on the southeastern corner of the granny unit, which he claims was open. Even if this were true on February 15, 2019, Officer Smith still could not see what was occurring inside the granny unit without physically entering the property and going up to the door. His view of these goings-on would be blocked, in part, by the privacy fence and the door itself.

On this issue of the south door of the granny unit being open on February 15, 2019, *U.S. v. Oaxaca,* 233 F.3d 1154 (9th Cir. 2000) is instructive. After preliminary investigatory work into methamphetamine sales, DEA agents went to the home of a suspect they believed was the drug supplier. When they arrived at the suspect's home, they saw him standing inside an attached garage and arrested him. They searched the house for other family members who might consent to a search of the suspect's bedroom and ultimately obtained consent from the suspect's sister, whereupon they found incriminating drug paraphernalia and other items. The DEA agents had no warrant at the time.



On appeal, the defendant acknowledge the agents had probable cause to arrest him, but he argued the evidence they discovered was the product of an illegal arrest because the government admitted there were no exigent circumstances. The government also argued that no warrant was required because the defendant's garage was not part of his home. The 9th Circuit disagreed, writing:

> "In the face of clearly contrary law, the Government asserts that the agents were not required to obtain an arrest warrant because Oaxaca's garage is not part of his home... "No reason exists to distinguish an attached garage from the rest of the residence for Fourth Amendment purposes. We can conceive of no reason to distinguish a garage, where people spend time, work, and store their possessions, from a den or a kitchen, where people spend time, work, and store their possessions. Simply put, a person's garage is as much a part of his castle as the rest of his home." *Oaxaca, supra,* 233 F.3d at 1157.

The Court went on to reject the government's argument that because the suspect was standing in an open garage door, the agents did not need a warrant. The Court wrote:

> "...[T]he Government went so far as to suggest that a person who desires the protection of the Fourth Amendment must keep his doors and windows shut. The Fourth Amendment does not, however, protect only hermetically sealed residence. Indeed, the argument that anyone who is visible from the street implicitly invited the Government to enter his home not only deeply offends commons sense, but flies in the face of well-established law." *Ibid.*

In this case, the granny unit appears to be a detached garage, but this fact is of no consequence. Officer Smith's argument that the granny unit was "not close to the residence or in its curtilage" is simply wrong. See, Motion, 14:4. Whether the Court characterizes the structure as a detached garage or a granny unit makes no difference because both types of structures have been recognized under well-established law as deserving Fourth Amendment protection when they are within the curtilage of the home. In *Taylor v. United States*, 286 U.S. 1 (1931), the structure searched was a metal garage adjacent to the dwelling house; in *Robinson v. United States*, 165 F.2d 752 (6th Cir. 1948), the search was a smokehouse; and in *Walker v. United States*, 125 F.2d 395, 396 (5th Cir. 1942), the search was of a shed consisting of a



chicken house and garage, which stood **_fifty to sixty feet from the dwelling house_**. In each instance, these structures were considered part of the curtilage, so the granny unit in this case, only about twenty-five feet from the residence and blocked off by the privacy fencing, is curtilage.

After speaking to St. Clair and learning the owner was not at the property, Officer Smith chose not to leave the property. Instead, he then purposefully walked through a 74-inch tall, solid wood access gate he claims was also open and re-entered the property a second time, taking still more photographs of Cupp's property including the private residence from inside the 93-inch tall privacy fence. Officer Smith claims he did not walk up to the residence or go over to the row of barns some fifty yards away south of where these events took place. Officer Smith claims that upon making the second entry onto the property, he kept himself underneath a "carport," which is actually an awning structure, not a carport. Nevertheless, he wrote up violation notices that both the residence and the barns were undergoing "remodeling." This is significant. When Officer Smith photographed the residence, and which he noted at his deposition, there is clear reflection of light and clouds blocking the view through the windows. Cupp was not home at the time, so the interior of the residence would have been dark. Moreover, Officer Smith is only five feet, eight inches tall. The interior privacy fence is six feet, eight inches tall. Taken together, these facts would have made it unlikely, if not impossible, for Officer Smith to be able to see inside the residence unless he physically walked over to the residence, beyond the interior privacy fence, and looked inside the windows.

Moreover, Officer Smith again ignores the fact the Arlington Avenue property was almost entirely fenced in on February 15, 2019, with the exception of the 8-feet wide gap he walked through.



## C. <u>Officer Smith is Not Entitled to Qualified Immunity as a Matter of Law</u>

### A. The Two-Pronged Qualified Immunity Analysis

A defendant such as Officer Smith is entitled to qualified immunity as a matter of law only if, taking the facts in the light most favorable to the nonmoving party, he or she did not violate any clearly established constitutional right. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). If reasonable jurors could believe that Officer Smith violated the plaintiff's constitutional right, and the right at issue was clearly established, the case should proceed to trial. *Id.*; *see also LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000) ["If … there is a material dispute as to the facts regarding what the officer or the plaintiff actually did, the case must proceed to trial, before a jury if requested."]. "Though we may excuse the reasonable officer for … a mistake, it sometimes proves necessary for a jury to determine first whether the mistake, was, in fact, reasonable." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168 (9thCir. 2013) (citations omitted); *see also Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) [explaining that if determining reasonableness of officer's action depends on disputed issues of fact—*i.e.*, which version of facts is accepted by jury—this is a question of fact best resolved by jury].

Thus, the qualified immunity analysis consists of two prongs: (1) whether the facts the plaintiff alleges make out a violation of a constitutional right; and (2) whether that right was clearly established at the time the defendant acted. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020).

Whether a right is clearly established turns on whether it is "sufficiently definite that any reasonable official in the defendant's shoes would have understood he was violating it." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019), quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (9th Cir. 2018). The goal is to "***define the contours of the right***



***allegedly violated in a way that expresses what is really being litigated***." *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1158 (9th Cir. 2000) (emphasis added). The right should be defined in a way that is neither "too general" nor "too particularized." *Id.* Casting an alleged violation too particularly, "would be to allow [the instant defendant], and future defendants, to define away all potential claims." *Id.*, quoting *Kelly v. Borg,* 60 F.3d 664, 667 (9th Cir. 1995); *see also Simon v. City of New York,* 893 F.3d 83, 96-97 (2d Cir. 2018) ["This task involves striking a balance between defining the right specifically enough that officers can fairly be said to be on notice that their conduct was forbidden, but with a sufficient measure of abstraction to avoid a regime under which rights are deemed clearly established only if the precise fact pattern has already been condemned."] The plaintiff bears the burden of showing that the rights allegedly violated were clearly established. *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017).

In the Ninth Circuit, courts must look to binding precedent to determine if a right is clearly established. "If the right is clearly established by decisional authority of the Supreme Court or this Circuit, [the] inquiry should come to an end. On the other hand, when 'there are relatively few cases on point, and none of them are binding,' we may inquire whether the Ninth Circuit or Supreme Court, at the time the out-of-circuit opinions were rendered, would have reached the same results. Thus, in the absence of binding precedent, we 'look to whatever decisional law is available to ascertain whether the law is clearly established' for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004).

A plaintiff need not find "a case directly on point," but existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) [emphasizing "the



longstanding principle that 'clearly established law' should not be defined 'at a high level of generality'"], quoting *Ashcroft, supra,* 563 U.S. at 742; *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016). "For purposes of qualified immunity, we resolve all factual disputes in favor of the party asserting the injury." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).

> **(2)   When Viewed in the Light Most Favorable to Cupp, Officer Smith Violated Cupp's Clearly Established Constitutional Rights Under the Fourth Amendment When He Entered and Inspected the Arlington Avenue Property Without an Inspection Warrant**

Two questions are "really being litigated" in this case. First, on February 15, 2019, did Cupp have a constitutional right to be free from a warrantless search of his Arlington Avenue property by Officer Smith? Second, on February 15, 2019, was Cupp's right clearly established such that a reasonable inspection officer should have known he needed to obtain an inspection warrant before he entered and searched the Arlington Avenue property. The answer to both questions is yes.

The Fourth Amendment to the United States Constitution provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Amend. IV.

The U.S. Supreme Court has characterized this right as "basic to a free society." *Wolf v. Colorado,* 338 U.S. 25, 27 (1949).

As the 9th Circuit has observed, in most qualified immunity cases, "the Supreme Court has provided little guidance as to where courts should look to determine whether a particular right was clearly established at the time of the injury." *Boyd, supra,* 374 F.3d at 781 (9th Cir. 2004). However, this is not one of those cases.



In *Camara v. Municipal Court,* 387 U.S. 523 (1967), a case also involving a warrantless search of private property by a code enforcement officer, the Supreme Court held that an inspection warrant was required before a code enforcement officer conducted an inspection of private property. The Court recognized:

> "Nevertheless, one governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant." *Camara*, 387 U.S. at p. 528-529.[1]

Here, there is no dispute that Officer Smith entered Cupp's property, and that he did not have a warrant when he did so. There is no question in this case that he lacked consent. Officer Smith admits that he did not have exigent reasons to enter the property.

## D. Cupp's State Law Trespass is Not Barred for Failure to Submit a Timely Government Tort Claim

Defendant argues that Cupp cannot recover on his state law trespass claim because Cupp did not timely present a claim pursuant to California Government Code section 910 ("Section 910"). While Defendant is correct only inasmuch as a Section 910 claim is a condition precedent to suit against a public entity in tort, Defendant's argument that Cupp is barred is incorrect. California Government Code Sections 910 and 910.2 set forth the requirements for the form and content of a claim against a public entity in California. The claim must be in writing, signed by the claimant, and must show the following:

- Claimant's name and address;
- The post office address to which claimant desires notices to be sent;

---

[1] According to Shepard's online service via Lexis, *Camara* has been cited well over 3,000 times by various courts, with a mere 121 cases indicating caution and only 1 case that questioned the Court's holding. This latter case, a case from the 9th Circuit involving the establishment of border checkpoints, was subsequently reversed by the U.S. Supreme Court. See, *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976). Thus, it can fairly be said that the inspection warrant requirement was "clearly established" by February 15, 2019, and Officer Smith should have known that.



- The date, place and other circumstances of the occurrence giving rise to the claim;
- A general description of the injury "so far as it is known" at the time the claim is presented;
- The names of the public employees allegedly causing the injury, if known; and
- The amount of damages claimed if it totals less than $10,000, but if the amount claimed is $10,000 or more, "no dollar amount shall be included in the claim."

*Cal. Govt. Code, §§ 910, 910.2.*

A claimant is not required to use the form provided by the public entity, and a claim that furnishes the information required by statute satisfies the Government Claims Act, even if it omits other information requested on the claim form by the public entity. *Blair v. Superior Court,* 281 Cal.App.3d 221, 225 (2018).

Moreover, technical defects in the content of a claim will not invalidate the claim so long as it "substantially complies" with the statutory requirements. The test is whether sufficient information is disclosed "to enable a public entity to investigate and evaluate the claim to determine whether settlement is appropriate." *Phillips v. Desert Hosp. Dist.,* 49 Cal.3d 699, 706 (1989). To meet this test, the claim need not be a model of precision. So long as a factual basis for recovery is "fairly reflected" in the written claim, the claim is sufficient. *Stockett v. Association of Calif. Water Agencies Jt. Powers Ins. Auth.,* 34 Cal.4th 441, 446 (2004).

*Wood v. Riverside Gen. Hosp.,* 25 Cal.App.4th 1113, 1116-1118 illustrates an example of a situation that fails the "substantial compliance" test. In that case, a minor patient's mother in a medical malpractice action sent three, written communications to the defendant hospital in which she generally complained about sub-par hospital conditions. The Court of Appeals agreed with the trial court that even taken together, these communications did not constitute substantial compliance with the California's Government Tort Claims Act. In reaching this



conclusion, the Court found two factors to be of particular importance. First, plaintiff did not "direct the letters to one of the persons specified in [Government Code] section 915." *Wood, supra,* 25 Cal.App.4th at p. 1117. Second, there was no "indication that plaintiff intended his letters to constitute a claim against the hospital" *Id.* at p. 1118. The Court reasoned that had there been such an indication, "the recipient might well have forwarded them to the appropriate county department responsible for the handling of such claims" *Ibid.*

The circumstances here stand in sharp contrast to those found in *Wood.* Here, the alleged violation occurred on February 15, 2019. On February 20, 2018, only five days later, Cupp sent a written letter by certified mail to Tennis Wick, the Director of the County of Sonoma's Permit & Resource Management Department, the department that employs Officer Smith. The letter was also sent certified mail to Officer Smith. Finally, and most significantly Cupp sent the same letter by certified mail to the County of Sonoma's Board of Supervisors and the County's Risk Management Division. Government Code section 915 merely requires that a claim either be presented or mailed to the clerk, secretary, or auditor of the public entity, or to "*the governing body at its principal office.*" *Cal. Govt. Code, § 915(a)(1)-(2).* Cupp complied by mailing his claim certified mail to the County of Sonoma Board of Supervisors and the Risk Management Division at 575 Administration Drive in Santa Rosa, California. This is the "governing body" for the County of Sonoma, and this location is the address of its principal office.

However, even if the Court is inclined to find that Cupp's February 20, 2019 letter fails the substantial compliance test, Officer Smith's defense of an untimely government tort claim still must fail because the County never informed Cupp that his February 20, 2019 letter was insufficient in any way. Documents failing the substantial compliance test may still constitute a "claim," though defective, triggering the entity's duty to give claimant a chance to cure the



defects. *City of Stockton v. Superior Court,* (2007) 42 Cal.4th 730, 744-745; *Phillips, supra,* 49 Cal.3d at 709. Here, the County did nothing in response to Cupp's February 20, 2019 letter, even though the same Risk Management Dept. had previously treated Cupp's certified mailings as a government claim, even though the previous mailings – the Notices of Posting of No Trespassing - were far less like a government claim than Cupp's February 20, 2019 letter. The County had an obligation to inform Cupp if the February 20, 2019 letter was insufficient to give him an opportunity to cure the deficiencies, which they failed to do. *Cal. Govt. Code, § 910.8.* This failure waives the defense that Cupp did not present a timely government claim. *Cal. Govt. Code, § 911.*

**E. Officer Smith is Not Entitled to Statutory Immunity Under California Law**

In his Motion, Officer Smith argues he is entitled to immunity under California Government Code sections 820.4 or 821.8. Neither provide protection, nor does Government Code section 820.2. Officer Smith did not specifically raise Section 820.2 in the Motion, but in an abundance of caution, Cupp addresses it here.

California Government Code section 820.4 states:

> "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

California Government Code section 821.1 states:

> "A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law. Nothing in this section exonerates a public employee from liability for an injury proximately caused by his own negligent or wrongful act or omission."

California Government Code section 820.2 states:

> "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."



The case of *Ogborn v. City of Lancaster*, 101 Cal.App.4th 448 (2002) addresses and explains the interplay of these three statutes in a case involving various actions by code enforcement inspectors. In *Ogborn*, the City of Lancaster undertook a program to clean up certain properties in the city, including a property occupied by tenants who were living in a dilapidated house at a property that also had junkyard conditions and other defects. Code enforcement officer Hawley was in charge of the program. Two, other code enforcement officers, St. John and Tebbs, inspected the tenants' property pursuant to an inspection warrant.

Thereafter, Hawley sent a letter to the tenants advising the property was unsafe and a nuisance, and an abatement hearing was held a short time later under the direction of Hawley. An order issued allowing for the demolition of the structure. St. John and Tebbs obtained another inspection warrant to abate the nuisance, which resulted in the tenants being forcibly removed from the property, the house was demolished, and the tenants personal property was destroyed. The tenants sued, and the code enforcement officers raised Sections 820.2, 820.4, and 821.8 in their defense. The trial court granted summary judgment in favor of the officers, which the Court of Appeal affirmed in part and reversed in part. The Court analyzed each statute and how it applied to each of the code enforcement officers.

First, the Court agreed that Section 820.2 immunized Hawley from liability because he did not directly participate in obtaining the warrant or the demolition at the property. All Hawley did was conduct the initial hearing declaring the property to be a nuisance. The Court recognized that the goal of Section 820.2 is to immunize "basic policy decisions," which are "discretionary," such as the decision to conduct an abatement hearing, rather than "operational" decisions like obtaining a warrant or demolishing property. *Ogborn, supra,* 101 Cal.App.4th at 461.

Conversely, the Court disagreed that Section 820.2 immunized St. John. St. John was present at the property and gave the demolition order. The Court considered this to be the "implementation" of the city's abatement program, which is not a discretionary act. *Ibid.*

Applying the Court's rationale to this case, it is clear that Officer Smith was not engaged in a "basic policy decision" when he decided to enter onto Cupp's property without a warrant, consent, or exigent circumstances. He was engaged in implementing the County's code enforcement program in the field, which is an "operational" decision. Section 820.4 does not protect Officer Smith.

Next, the Court addressed the immunity provided by Section 820.4. The Court determined that because St. John had obtained an inspection warrant, Section 820.4 offered protection from liability on the tenants' trespass claim, but it did not immunize him from liability for the tenants' conversion claim for demolishing their property. *Ogborn, supra,* 101 Cal.App.4th at 462. By inference, the Court would not have found immunity for St. John under Section 820.4 had St. John entered upon the tenants' property without a valid warrant in the first place, which is precisely what Officer Smith did here.

Finally, the Court addressed the immunity found in Section 821.8. Here, the Court found that St. John was completely protected because he had obtained an inspection warrant. He was authorized by law to enter the property. Again, the implication of this decision is that, had St. John not obtained an inspection before entering upon the tenants' property, St. John would not be protected by Section 821.8 immunity.

Here, Officer Smith did not have a warrant. He did not have consent. He did not perceive any exigent circumstances such as a threat to life, health or safety. Yet, he entered Cupp's property anyway and conducted an inspection and photographing private spaces at the property. Contrary to Officer Smith's self-serving Declaration where he declares "I had the



right to enter" the property, he did not. He should not enjoy immunity under Section 821.8 either.

**F. Officer Smith Believed He Was Held to a Higher Standard Than a Police Officer When Conducting a Search; Yet, He Still Conducted a Warrantless Search of Cupp's Property, Justifying Cupp's Claim for Punitive Damages**

While punitive damages are not available against municipalities, counties or other governmental entities unless expressly authorized by statute, these damages may be available against governmental employees acting in their individual capacities. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 259-71 (1981); *Monell v. New York City Dept. of Soc. Services*, 436 U.S. 658 (1978).

In § 1983 claims, "[i]t is well-established that a 'jury may award punitive damages . . . either when a defendant's conduct was driven by evil motive or intent, ***or*** when it involved a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993), emphasis added. In *Dang v. Cross*, the Ninth Circuit held this "statement of the law of punitive damages is incomplete, however. The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases...[M]alicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages and foster 'deterrence and punishment over and above that provided by compensatory awards.' . . . Such acts are therefore all proper predicates for punitive damages under § 1983." *Dang v. Cross,* 422 F.3d 800, 807 (9th Cir. 2005), citing *Smith v. Wade*, 416 U.S. 30, 49 (1983)

If a plaintiff's claim under state law yields punitive damages, whether plaintiff is entitled to these damages should be judged by reference to state law standards. *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1056 (9th Cir. 1997). Under California law, recovery of punitive damages is governed by California Civil Code section 3294, subdiv. (a), (c), which states:



"In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. …

(c) As used in this section, the following definitions shall apply:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and ***conscious disregard of the rights or safety of others***.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in ***conscious disregard of that person's rights***."

*Cal. Civ. Code, § 3294.*

At his deposition, Officer Smith testified that, when it comes to conducting a search of private property, he believes he is held to a higher standard than a police officer. In other words, he believes that, in his role as a code enforcement inspector, he is more "curtailed" than a police officer in conducting property searches. Nevertheless, this belief did not prevent Officer Smith from intruding upon Cupp's private property on February 15, 2019, not once but twice, even though he knew he had no inspection warrant, lacked anyone's consent, and admits there were no exigent circumstances at the property. Officer Smith has declared that he "had the right to enter" Cupp's property. This conduct and, frankly, hubris demonstrates a conscious disregard for Cupp's Fourth Amendment rights, which warrants an award of punitive damages.

## G. Objections to Officer Smith's Declaration in Support of Motion

Cupp objects to the Declaration of Officer Smith submitted in support of the Motion as follows:

Page 2, ¶ 8, lines 27 – Page 3, line 1, which states: "On February 15, 2019, I had the right to enter the areas around the carport and garage which were open to anyone to make a delivery such as for Fed Ex or the postal service."



Grounds for objection: Calls for a legal conclusion; lacks foundation; lacks personal knowledge; calls for speculation. Officer Smith is testifying to an ultimate question of law. He does not have personal knowledge whether the area is one where Fed Ex delivery persons or mail carriers would deliver packages to the property.

### IV. <u>CONCLUSION</u>

Officer Smith entered and conducted a *per se* unreasonable search of Cupp's property on February 15, 2019 in conscious disregard of Cupp's rights. Office Smith lacked an inspection warrant. He entered the property without consent or exigent circumstances.

On February 15, 2019, the requirement that a code enforcement inspector have an inspection warrant before entering upon private property was well-established, and a reasonable, properly trained code enforcement inspector should have known this fact. Officer Smith is not entitled to qualified immunity.

Neither is Officer Smith entitled to state statutory immunities. These immunities do not affect Cupp's federal, constitutional claims in any event. As to Cupp's trespass claim, however, Officer Smith is not entitled to statutory immunity because on February 15, 2019, he was not engaged in a discretionary, policy-making function when he made the decision to enter Cupp's property to search and inspect. Moreover, because he did not have an inspection warrant, he was not authorized by law to be on Cupp's property in the first place.

Cupp's state law trespass claim is not barred for failure to timely present a government claim because Cupp presented a document to the County Board of Supervisors and Risk Management on February 20, 2019 that substantially complied with the claim presentation requirements. In any event, the County failed to notify Cupp that this document was insufficient, waiving the defense.

For the foregoing reasons, and based on the facts and evidence presented, Cupp



respectfully requests the Court deny Officer Smith's Motion in its entirety.

Respectfully submitted,

Date: December 31, 2021                    **YOUNG LAW GROUP**

By: *<u>/s/ Eric G. Young, Esq</u>*
ERIC G. YOUNG, ESQ., Attorneys
for Plaintiff RONALD CUPP

