1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RONALD CUPP,

          Plaintiff,

    v.

ANDREW SMITH,

          Defendant.

Case No.  20-cv-03456-PJH

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 78

      Defendant's motion for summary judgment, or partial summary judgment, came on for hearing before this court on February 3, 2022.  Plaintiff appeared through his counsel, Eric Young.  Defendant appeared through his counsel, Michael King.  Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

**BACKGROUND**

**I.     Factual History**

      This case concerns the February 15, 2019 warrantless search of plaintiff Ronald Cupp's property by Sonoma County Code Inspector Andrew Smith ("defendant").  Plaintiff purchased the property located at 4640 Arlington Ave, Santa Rosa, California ("Arlington property") on August 18, 1989.  Smith Decl. ISO Mot. for Summ. J., Ex. 6 (Dkt. 78-9 at 2).  Between April 4, 2013 and January 24, 2019, plaintiff underwent foreclosure proceedings and negotiated ownership terms over the property with Federal National Mortgage Association ("Fannie Mae").  Cupp Decl. ISO Opp'n to Mot. for Summ. J. (Dkt. 81-1 at 2).  Plaintiff testified that he reoccupied the Arlington property around January 10, 2019.  Dkt.

78-15 at 4.  On January 24, 2019, Fannie Mae granted plaintiff a quitclaim deed to the property but the deed was not recorded.  Dkt. 81-1 at 14.  The quitclaim deed was redrawn on February 20, 2019 and recorded shortly thereafter.  Dkt. 78-8 at 2.

According to plaintiff, the Arlington property is a 4.33-acre parcel of land.  Dkt. 81-1 at 2.  The property is only accessible by a private road, and is landlocked on three sides (northern, southern, and eastern).  Id. at 2–3.  The property has a two-story single family home residence, along with a garage located twenty-five feet from the southwest corner of the residence.  Id. at 3.  Plaintiff declared that the residence and garage are enclosed by fences and/or gates.  Id. at 4.  The garage is accessible through two doors, none of which face the street.  Id. at 3.  The only way to approach the garage is by entering the Arlington property through an eight-foot gap in a ninety-three inch tall wooden fence on the western edge of the property.  Id. at 5.  According to plaintiff, neither the public nor delivery persons access the Arlington property through this gap.  Id.

According to defendant's violation complaint form, an unidentified individual complained about the Arlington property on January 28, 2019, alleging unpermitted construction.  Dkt. 78-6 at 2.  On January 29, 2019, defendant sent Fannie Mae a courtesy notice, stating that there had been one or more complaints made about the Arlington property concerning possible code violations and that he would like to arrange a time to see the property.  Dkt. 78-7 at 2.

On February 15, 2019, defendant visited the Arlington property without the consent of either plaintiff or Fannie Mae.  According to defendant's declaration, defendant observed from the street new construction, and he heard sounds of construction activity.  Dkt. 78-1 at 2.  According to plaintiff, defendant entered the property through a gap in a wooden gate.  Dkt. 81-1 at 4–5.  According to Daniel St. Clair's declaration, defendant walked to the back of the garage where a door was open; he entered the garage through the door and found a worker there, St. Clair.  Dkt. 78-2 at 1–2.  St. Clair declared that he informed defendant that he was not the owner of the Arlington property but that he was doing remodeling work for the owner; namely, St. Clair was adding new flooring to the

2

1   garage.  Id.  According to defendant, he proceeded to walk around the garage and the

2   adjacent carport and took several photographs of the property.  Dkt. 78-1 at 2–3.

3   Defendant testified that he left citations for plaintiff for construction without a permit.  Dkt.

4   78-10 at 10.

5   On February 20, 2019, plaintiff sent a letter to the County of Sonoma regarding the

6   February 15, 2019 inspection, stating the following: "I intend to file a claim against the

7   County of Sonoma if my rights are violated and will be contacting you again shortly in

8   regards to this intentional tort and damage if our constitutional protections are not

9   upheld."  Dkt. 78-16 at 3.  Plaintiff then filed his claim with the County on October 23,

10  2019.  Dkt. 78-18 at 3.  On November 6, 2019, the County of Sonoma informed plaintiff

11  his claim was untimely because it was not presented within six months of the event or

12  occurrence, as was required by sections 901 and 911.2 of the California Government

13  Code.  Id. at 7.

14  **II.    Procedural History**

15  On May 21, 2020, plaintiff filed this lawsuit.  Dkt. 1.  Plaintiff brought various claims

16  under 42 U.S.C. § 1983 in connection with defendant's allegedly unlawful search of the

17  Arlington property.  Id.  On September 9, 2020, this court dismissed with prejudice all

18  claims against all previously named defendants, except Smith and the County of

19  Sonoma.  Dkt. 36.  On October 7, 2020, plaintiff filed his amended complaint.  Dkt. 38.

20  On February 17, 2021, the court dismissed the County of Sonoma as a defendant.  Dkt.

21  57.  Currently, Smith is the only remaining defendant in this lawsuit, and plaintiff has two

22  remaining claims against him: (1) a § 1983 claim for an unlawful search in violation of the

23  Fourth Amendment, and (2) a California state law claim for trespass.  Dkt. 60.  On

24  December 9, 2021, defendant moved for summary judgment on plaintiff's remaining

25  claims.  Dkt. 78.

26  **DISCUSSION**

27  **A.    Legal Standard**

28  A party may move for summary judgment on a "claim or defense" or "part of . . . a

3

1    claim or defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when "there

2    is no genuine dispute as to any material fact and the movant is entitled to judgment as a

3    matter of law." Id.

4        A party seeking summary judgment bears the initial burden of informing the court

5    of the basis for its motion, and of identifying those portions of the pleadings and discovery

6    responses that demonstrate the absence of a genuine issue of material fact. See

7    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might

8    affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

9    (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a

10   reasonable jury to return a verdict for the nonmoving party. Id.

11       On an issue where the nonmoving party will bear the burden of proof at trial, the

12   moving party may carry its initial burden of production by submitting admissible "evidence

13   negating an essential element of the nonmoving party's case," or by showing, "after

14   suitable discovery," that the "nonmoving party does not have enough evidence of an

15   essential element of its claim or defense to carry its ultimate burden of persuasion at

16   trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir.

17   2000).

18       When the moving party has carried its burden, the nonmoving party must respond

19   with specific facts, supported by admissible evidence, showing a genuine issue for trial.

20   Fed. R. Civ. P. 56(c), (e).  But allegedly disputed facts must be material—the existence of

21   only "*some* alleged factual dispute between the parties will not defeat an otherwise

22   properly supported motion for summary judgment." Anderson, 477 U.S. at 247–48.

23       When deciding a summary judgment motion, a court must view the evidence in the

24   light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

25   Id. at 255; see Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

26   **B.    Analysis**

27       **1.    The Fourth Amendment**

28       Defendant moves for summary judgment on plaintiff's Fourth Amendment claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

The Fourth Amendment "protects two types of expectations, one involving searches, the other seizures." Lavan v. City of Los Angeles, 693 F.3d 1022, 1027 (9th Cir. 2012) (internal quotation marks omitted).  A "search occurs when the government intrudes upon an expectation of privacy that society is prepared to consider reasonable." Id. (internal quotation marks omitted).  Defendant argues his warrantless search of the Arlington property was reasonable and legally permissible.

First, defendant argues that plaintiff had no reasonable expectation of privacy because the garage is not within the curtilage of plaintiff's home.  The "extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." United States v. Duenas, 691 F.3d 1070, 1081 (9th Cir. 2012) (internal quotation marks omitted).  The court considers four factors in determining whether an area is within the curtilage of a home: (1) "the proximity of the area claimed to be curtilage to the home;" (2) "whether the area is included within an enclosure surrounding the home;" (3) "the nature of the uses to which the area is put;" and (4) "the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987). "While combining these factors does not produce a finely tuned formula that, when mechanically applied, yields a correct answer to all extent-of-curtilage questions, the factors are useful in determining the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's umbrella of Fourth Amendment protection." Duenas, 691 F.3d at 1081 (internal quotation marks omitted).  Notably, the Supreme Court "has long extended the Fourth Amendment's protection to garages." United States v. Oaxaca, 233 F.3d 1154, 1157 (9th Cir. 2000).

The Dunn factors do not support defendant's position.  First, plaintiff's garage is in close proximity to the residence, only twenty-five feet away.  Dkt. 81-1 at 3; see, e.g., Dunn, 480 U.S. at 302 (finding a barn not within close proximity of the curtilage of the home because it was sixty yards away from the house); United States v. Johnson, 58 F.

5

1    App'x 287, 288 (9th Cir. 2003) (noting a shed that was forty-to-fifty yards from a

2    residence "weigh[ed] against a finding that the shed is within his curtilage").  Second,

3    plaintiff's garage and residence were enclosed together by a wooden fence that was

4    ninety-three inches tall and running the length of the street (Dkt. 81-1 at 4).  See, e.g.,

5    Dunn, 480 U.S. at 302 (finding defendant's barn "did not lie within the area surrounding

6    the house that was enclosed by a fence"); United States v. Davis, 530 F.3d 1069, 1078

7    (9th Cir. 2008) (finding a "workshop was set apart from the house and other areas of the

8    [defendant's] property by a separate chain-link fence").  Although defendant asserts the

9    garage here was separately fenced from the residence (Dkt. 78 at 16), plaintiff declares

10   otherwise (Dkt. 81-1 at 4), creating a triable issue of fact.  Third, the parties also dispute

11   the garage's use at the time of defendant's inspection.  Plaintiff asserts the garage was

12   being used as a living space or "granny unit" (Dkt. 81-1 at 3), which would weigh in favor

13   of finding the garage was within the curtilage of plaintiff's home.  But plaintiff's

14   construction worker, upon whom defendant relies, declared he was "installing flooring in

15   the garage" at the time of the inspection.  Dkt. 78-2 at 1.  If the garage was being used as

16   a living space, it was not being used as a living space at the time of the inspection.  See

17   United States v. Barajas-Avalos, 377 F.3d 1040, 1057 (9th Cir. 2004) (stating "occasional

18   occupancy did not demonstrate that the travel trailer harbored those intimate activities

19   associated with domestic life and the privacies of the home") (internal quotation marks

20   and alterations omitted).  Photographs from the inspection appear to show that the

21   garage was being used as a workshop for storing construction material.  Thus, a further

22   triable issue of fact exists.  Fourth, plaintiff protected the garage from observation, even if

23   he did not rely on "no trespassing" signs.  Plaintiff built a ninety-three inch tall wooden

24   fence around the garage to shield it from observation and from the public.  Dkt. 81-1 at 4.

25   Taken together, the Dunn factors raise triable issues of fact as to whether the garage was

26   within the curtilage of plaintiff's home.  Thus, the court cannot find that plaintiff had no

27   reasonable expectation of privacy, and defendant has not met his burden to obtain

28   summary judgment on this basis.

United States District Court
Northern District of California

1    Second, defendant argues that his warrantless search was permissible under the

2    "open fields" doctrine. Dkt. 78 at 14. This doctrine is inapplicable where an officer

3    searches the curtilage of a home. See United States v. Jones, 565 U.S. 400, 411 (2012)

4    ("Quite simply, an open field, unlike the curtilage of a home . . . is not one of those

5    protected areas enumerated in the Fourth Amendment") (internal quotation marks and

6    citation omitted). Accordingly, the doctrine cannot apply until and unless the garage is

7    found not to be within the curtilage of plaintiff's home. Thus, summary judgment on this

8    basis is not warranted. Additionally, defendant's reference to the "plain view" exception

9    does not appear to apply here where no item in plain view was seized. See, e.g.,

10   Kentucky v. King, 563 U.S. 452, 463 (2011); United States v. Brinkerhoff, 404 F. App'x

11   147, 149 (9th Cir. 2010) ("Officers may seize an item in plain view if they have probable

12   cause to believe that the item is incriminating").

13   Third, defendant argues his unwarranted search was permitted pursuant to the

14   "knock and talk" exception. The knock and talk exception "permits law enforcement

15   officers to encroach upon the curtilage of a home for the purpose of asking questions of

16   the occupants." United States v. Lundin, 817 F.3d 1151, 1158 (9th Cir. 2016) (internal

17   quotation marks omitted). To "qualify for the exception, the government must

18   demonstrate that the officers conformed to the habits of the country by doing no more

19   than any private citizen might do." Id. at 1159 (internal quotation marks, citations, and

20   alterations omitted). For example, "a doorbell or knocker on the front door often signals a

21   homeowner's consent allowing visitors to approach the home by the front path, knock

22   promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."

23   Bovat v. Vermont, 141 S. Ct. 22 (2020) (internal quotation marks omitted).

24   Unlike a front door which customarily invites individuals to engage with a

25   property's resident, defendant entered the garage through an eight-foot gap in a wooden

26   fence that is not available to the public. Dkt. 81-1 at 4–5. Even if plaintiff did grant an

27   implied license, defendant likely exceeded the scope of that license. The "customary

28   license to approach a home and knock is generally limited to the purpose of asking

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    questions of the occupants." <u>Lundin</u>, 817 F.3d at 1159 (internal quotation marks

2    omitted).  Defendant approached the garage area, entered the garage door, spoke with

3    plaintiff's worker, walked through plaintiff's carport, and then took multiple photographs of

4    the garage and surrounding area.  <u>See</u> <u>Bovat</u>, 141 S. Ct. 22 ("A visitor cannot traipse

5    through the garden, meander into the backyard, or take other circuitous detours that veer

6    from the pathway that a visitor would customarily use") (internal quotation marks omitted).

7    Thus, summary judgment is not warranted on this basis.

8          The court has found that defendant has not shown that he is entitled to summary

9    judgment on the Fourth Amendment claim.  But that doesn't mean that the court has

10   found in plaintiff's favor; rather the court has found that the jury must first find the facts

11   before any defenses of defendant can be applied.  Defendant's motion for summary

12   judgment on plaintiff's Fourth Amendment claim is DENIED.

13         **2.    Qualified Immunity**

14         Defendant moves for summary judgment on plaintiff's Fourth Amendment claim on

15   the basis that he is entitled to qualified immunity.  The doctrine of "qualified immunity

16   shields individual officers from liability for civil damages insofar as their conduct did not

17   violate clearly established constitutional rights of which a reasonable person would have

18   known." <u>Kirkpatrick v. Cty. of Washoe</u>, 843 F.3d 784, 788 (9th Cir. 2016) (internal

19   quotation marks and alterations omitted).  "Summary judgment on qualified immunity is

20   not proper unless the evidence permits only one reasonable conclusion." <u>Munger v. City</u>

21   <u>of Glasgow Police Dep't</u>, 227 F.3d 1082, 1087 (9th Cir. 2000).  The court must determine

22   "(1) whether there has been a violation of a constitutional right; and (2) whether that right

23   was clearly established at the time of the officer's alleged misconduct." <u>Lopez v. City of</u>

24   <u>Glendora</u>, 811 F. App'x 1016, 1018 (9th Cir. 2020) (internal quotation marks omitted).  A

25   "constitutional right is clearly established at the time of the incident only if the right's

26   contours are sufficiently definite that any reasonable official in the defendant's shoes

27   would have understood that he was violating it." <u>Id.</u> (internal quotation marks omitted).

28         Reviewing the record in a light most favorable to plaintiff, the court finds that there

United States District Court
Northern District of California

1    are triable issues of fact as to whether defendant violated plaintiff's Fourth Amendment

2    rights.  Accordingly, the court DENIES defendant's alternative argument that he is entitled

3    to summary judgment on plaintiff's Fourth Amendment claim because he is qualifiedly

4    immune.

5            **3.    California Government Code § 910**

6            Defendant moves for summary judgment on plaintiff's California trespass claim,

7    arguing plaintiff failed to meet prelitigation requirements under California Government

8    Code § 910.  Section 910 requires a plaintiff to file a written claim with the government

9    within six months of an alleged violation "stating the date, place, and other circumstances

10   of the occurrence or transaction which gave rise to the claim asserted."  Mackovski v.

11   City of Garden Grove, 666 F. App'x 649, 654 (9th Cir. 2016) (internal quotation marks

12   omitted); see Cal. Gov't Code § 910.  Plaintiff did not comply with this requirement.

13   Plaintiff provided defendant with a letter on February 20, 2019 stating the following: "I

14   intend to file a claim against the County of Sonoma if my rights are violated, and will be

15   contacting you again shortly . . . ."  Dkt. 78-16 at 2 (emphasis added).  Plaintiff's letter

16   only states his conditional intent to file a claim, it does not provide actual notice of a valid

17   claim.  Indeed, plaintiff later presented his claim with the County of Sonoma on October

18   23, 2019, two months after the deadline had expired.  Dkt. 78-18 at 3.

19           Contrary to plaintiff's argument, defendant did not waive his right to assert this

20   defense.  Section 911 states that "[a]ny defense as to the sufficiency of the claim based

21   upon a defect or omission in the claim as presented is waived by failure to give notice of

22   insufficiency with respect to the defect or omission."  Cal. Gov't Code § 911.  Because

23   plaintiff's February 20, 2019 letter does not qualify as a presented claim under § 910, the

24   § 911 defense waiver does not apply to defendant.  Accordingly, the court GRANTS

25   summary judgment in favor of defendant on plaintiff's California trespass claim.

26           In view of this holding, the court does not reach defendant's other defenses to the

27   trespass claim based on California Government Code sections 820.4 and 821.8.  At the

28   hearing defendant conceded his argument that plaintiff was not the legal owner of the

9

Arlington property on February 15, 2019.

### 4.      Punitive Damages

Defendant moves for summary judgment on plaintiff's claim for punitive damages. Dkt. 78 at 23. A jury "may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." <u>Dang v. Cross</u>, 422 F.3d 800, 807 (9th Cir. 2005) (internal quotation marks omitted). Viewing all evidence in a light most favorable to plaintiff, a reasonable juror may find defendant acted with callous indifference by failing to apply for a warrant, searching the Arlington property without plaintiff's consent, ignoring the fences on plaintiff's property, entering plaintiff's garage, searching plaintiff's carport, and taking photographs of plaintiff's property. Accordingly, the court DENIES defendant's motion for summary judgment on plaintiff's claim for punitive damages.

### CONCLUSION

The court GRANTS defendant's motion for summary judgment on plaintiff's state law trespass claim. The court DENIES defendant's motion for summary judgment on plaintiff's Fourth Amendment claim. The court SUSTAINS plaintiff's objection to paragraph 8 of defendant's declaration because it calls for a legal conclusion.

This matter is re-referred to Magistrate Judge Westmore for a settlement conference to take place within the next 120 days, or as soon thereafter as her calendar permits. If the parties are unable to settle the case, a case management conference will be held to schedule the trial.

**IT IS SO ORDERED.**

Dated: February 23, 2022

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge